**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 3, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHNNIE FRANKLIN-EL,

Defendant-Appellant.

No. 07-3259

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**
**(D.C. No. 06-CR-40011-MLB)**

---

Lawrence W. Williamson, Jr., Williamson Law Firm, L.L.C., Kansas City, Kansas, for Defendant-Appellant.

Tanya J. Treadway, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **HOLMES**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Defendant Johnnie Franklin-El appeals his seventeen convictions of health care fraud and one conviction of obstruction of justice. The principal issue on appeal is whether sufficient evidence supports these convictions. Defendant also

claims entitlement to a new trial on the grounds of: (A) prosecutorial misconduct in closing argument, (B) erroneous admission of 404(b) evidence, and (C) cumulative error.[1] We find Defendant's obstruction of justice conviction to be unsupported by sufficient evidence, but affirm the district court on the remaining claims of error.

## BACKGROUND

As discussed more thoroughly in the companion case of *United States v. Peggy Franklin-El*, No. 07-3257, the evidence at trial established that Defendant and his spouse, Peggy Franklin-El, incorporated, owned, and operated The Great Meeting Is On For Your Success, a nonprofit business that provided services to the community. Both Defendant and Ms. Franklin-El were highly involved in the business and worked as client counselors, and both were active in the drug and alcohol treatment community for numerous years.

The record shows that from 1993 to 2003, the business survived mostly on income from fundraising. Then, in 2003, The Great Meeting became eligible to bill Medicaid for drug and alcohol treatment and case management services for addicted clients. Defendant and Ms. Franklin-El attended a multi-day Medicaid

---

[1] In a footnote in his principal brief, Defendant also moves to adopt the constitutional argument his co-defendant, Peggy Franklin-El, raised in her brief in the companion case, *United States v. Peggy Franklin-El*, No. 07-3257. In that case, we affirmed the district court's denial of Ms. Franklin-El's constitutional vagueness argument, and our reasoning and judgment apply equally here.

billing class as a prerequisite to this eligibility. Defendant's continuing education record, which was introduced as evidence, indicates he attended each session, and the trainer testified Defendant attended. The record shows that at the training, Defendant and Ms. Franklin-El were taught the assessment and authorization requirements as well as the processes for Medicaid billing. At trial, Defendant testified on his own behalf. He disputed that he attended all of the training but admitted he attended some.

Over the course of seventeen months, The Great Meeting submitted 1331 claims to Medicaid—counts two through fifty-three are representative of these. Both a billing expert and a medical expert testified that all fifty-two claims were false in numerous respects and none should have been paid. In fact, the billing expert reviewed all 1331 claims and found them all to be false and fraudulent. Specifically, the falsities consisted of: (1) indicating clients (including children) were addicted to drugs and alcohol when they were not, (2) claiming Defendants had provided drug and alcohol treatment when they had not, (3) indicating Defendants performed two assessments, when they really performed only one, (4) claiming services had been provided where no documentation supported these claims, and (5) implicitly representing that services were authorized by the regional assessment center when they were not.

The government presented evidence showing Defendant actively participated in a number of these schemes. For instance, documents allegedly

signed by Defendant indicated a child, Gary H., was not using alcohol or drugs while also indicating that he needed drug and alcohol services and that such services were being provided. Another document showed Austen W., a nine-year-old client, was receiving individual and group therapy. At trial, Defendant admitted he was listed as Austen's counselor, but denied memory of Austen. Defendant testified that, according to an initial assessment form, Austen had no addiction and would have no reason to receive addiction treatment, that is, individual or group therapy. Yet, The Great Meeting billed for individual and group therapy for Austen.

Further, Defendant admitted at trial that at least some of his clients—the children in particular—were not addicted to drugs or alcohol. This admission fits with evidence introduced by the government that it is not considered clinically possible to diagnose or treat anyone under age twelve as an addict. Nonetheless, The Great Meeting submitted claims for two children who were only weeks old and several children who were Defendant and Ms. Franklin-El's relatives. Defendant also admitted The Great Meeting provided transportation, after-school care, meals, and similar services, and that these services did not constitute addiction treatment. Defendant himself even provided some of these services. All in all, The Great Meeting received more than $420,000 from Medicaid for drug and alcohol claims for children alone.

Fact witnesses testified to Defendant's role in specifically recruiting people

with Medicaid cards. For instance, Defendant, along with Ms. Franklin-El, suggested a relative obtain a Medicaid card and turn it over to The Great Meeting in exchange for a rent-free place to live. The relative did so. Later, after she had problems obtaining grief counseling due to The Great Meeting's use of her card, the relative confronted Ms. Franklin-El. Ms. Franklin-El threatened to throw her out of the house, and Defendant changed the locks on the house several times. Through all this, the relative received no counseling from The Great Meeting.

Defendant also participated in the administrative aspects of The Great Meeting's Medicaid billing. Tracy Wagner, the government's billing expert, testified to her firsthand knowledge of this. Ms. Wagner worked for Electronic Data Systems, a company that contracted with Kansas Medicaid. After investigating and determining none of The Great Meeting's Medicaid claims should have been paid, Ms. Wagner sought to recoup the funds The Great Meeting had received. According to Ms Wagner, Defendant actively pursued The Great Meeting's appeal of the recoupment. He spoke with Ms. Wagner numerous times, arguing the claims should have been paid. In Ms. Wagner's opinion, during these conversations, Defendant showed an understanding of which claims had been submitted for which services and knowledge that the claims were for drug and alcohol treatment. Ms. Wagner attested that Defendant also voiced his understanding of the claims at numerous in-person meetings at the Office of Fair Hearings in Topeka, Kansas.

Additionally, Defendant participated with Ms. Franklin-El in an administrative review hearing on November 12, 2003. A verbatim transcript of this hearing was admitted into evidence at trial. The hearing was an appeal of two of The Great Meeting's claims for alcohol and drug treatment which had been denied by the Kansas Medikan program. Medikan is a state program similar in some ways to Medicaid, but with different enrollment criteria and stricter limitations on services. Because Ms. Franklin-El testified that she believed the Medikan clients to be covered by Medicaid at the time they received services, the defendants discussed Medicaid at the hearing. Defendant tacitly supported Ms. Franklin-El's claim that the clients were addicts who had received drug and alcohol treatment. However, the government's experts testified at trial that there is no indication any such treatment was provided.

The government presented evidence that Defendant personally benefitted from The Great Meeting's Medicaid funds, receiving more than $186,000 of the more than $1.24 million in Medicaid money The Great Meeting obtained.

Finally, the government presented evidence that after the investigation began, The Great Meeting submitted preauthorization documents to the regional assessment center. On September 16, 2004, Defendant and Ms. Franklin-El received a request for records, including proof the regional assessment center had authorized the billed services. Then, on October 28, 2004, they were served with a federal subpoena requesting the records. Shortly thereafter, The Great Meeting

started submitting preauthorization documents to the center. In November 2004 alone, documents for thirty clients were submitted. Additionally, the government established that after Defendant received the federal subpoena, he met with The Great Meeting's accountant and asked him to recreate transactions to determine whether they were business-related or personal.

The government ultimately charged Defendant with (1) conspiracy, (2) obstruction, (3) fifteen counts of money laundering, and (4) fifty-two counts of health care fraud. He stood trial with Ms. Franklin-El. A jury convicted him of seventeen counts of health care fraud—reflecting only the claims The Great Meeting made on behalf of children. The jury also convicted him of obstruction, conspiracy, and money laundering. However, as in Ms. Franklin-El's case, the district court declared a mistrial on the conspiracy count because of the jury's failure to identify which substantive crime Defendant and Ms. Franklin-El conspired to commit. The court also declared a mistrial on the money laundering counts because of a jury instruction error. The court granted the government's later motion to dismiss these charges. One additional count of conviction related to forfeiture. However, like Ms. Franklin-El, Defendant waived a jury trial on that count and has not complained about the final forfeiture amount imposed.

The court sentenced Defendant to ninety-two months' imprisonment (the bottom end of the guideline range) on each of the fraud counts and to sixty months on the obstruction count, all to run concurrently. The court also ordered

Defendant to serve two years of supervised release.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant first challenges the sufficiency of the evidence supporting his

convictions for health care fraud and obstruction.[2]

**A.     Health Care Fraud**

As with Ms. Franklin-El, Defendant's convictions for health care fraud

were based on the Medicaid claims The Great Meeting submitted.  Defendant

generally claims the government presented insufficient evidence of his intent to

defraud, without addressing any of his seventeen convictions individually.

We review this challenge *de novo*, determining whether, "viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime[s] beyond a reasonable

doubt."  *United States v. McPhilomy*, 270 F.3d 1302, 1307 (10th Cir. 2001)

(internal quotation marks omitted).  "By viewing the evidence in the light most

favorable to the government, we necessarily resolve any conflicts in the evidence

---

[2] Defendant also argues that because the conspiracy charges were ultimately dismissed, the underlying charges must necessarily fail.  However, the district court's declaration of a mistrial (and subsequent dismissal) as to the conspiracy count due to the jury's failure to identify which substantive crime Defendant and Ms. Franklin-El conspired to commit has no effect on the underlying charges. The case Defendant relies upon, *United States v. Migliaccio*, 34 F.3d 1517 (10th Cir. 1994), cannot be stretched to support this proposition.

in favor of the government and we assume the trier of fact found that evidence credible." *United States v. Williamson*, 53 F.3d 1500, 1516 (10th Cir. 1995). Accordingly, we do not reweigh conflicting evidence or consider the credibility of witnesses. *Id.* "In this respect, we must defer to the jury's resolution." *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006).

The government charged Defendant with health care fraud and with aiding and abetting health care fraud. To prove Defendant violated 18 U.S.C. § 1347, the government had to show he "knowingly and willfully" executed or attempted to execute a scheme to defraud a health care benefit program or a scheme to obtain a health care benefit program's money or property through false pretenses, representations, or promises. 18 U.S.C. § 1347. To establish knowledge and willfulness, "'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *Bryan v. United States*, 524 U.S. 184, 191–92 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)). We conclude the government presented sufficient evidence of Defendant's individual intent to defraud.

Significantly, the government presented evidence that The Great Meeting's records contained misrepresentations of the status of some of Defendant's clients. For instance, documents allegedly signed by Defendant characterized Gary H. as non-addicted, yet in need of drug and alcohol treatment. And the Great Meeting billed for another child client's addiction treatment, even though Defendant

admitted that, based on the initial assessment, the child would have no reason to receive such treatment.

Also notable is the evidence of Defendant's involvement in the Medikan hearing and in The Great Meeting's appeal of the recoupment. At the Medikan hearing, Defendant tacitly agreed that The Great Meeting had provided addiction treatment to two clients whose Medikan coverage was at issue. Yet the government's experts testified there was no evidence the Medikan clients received any such treatment. Moreover, Ms. Wagner, a government expert, testified that Defendant revealed his understanding of The Great Meeting's Medicaid billing during the company's appeal of the recoupment. In her opinion, Defendant knew the Medicaid claims were for drug and alcohol treatment and knew which claims had been submitted for which services. In conjunction with Defendant's trial admissions that the children and other clients were not addicts and that the support services offered by The Great Meeting did not constitute addiction treatment, this evidence supports a reasonable inference that Defendant was aiding and abetting the scheme to submit fraudulent Medicaid claims.

But there is more. The government also established Defendant's active role in obtaining Medicaid cards for billing purposes. One witness testified that Defendant and Ms. Franklin-El both encouraged a relative to provide her Medicaid card to them in exchange for a rent-free place to live. Defendant later changed the locks of the home numerous times when she challenged The Great

Meeting's use of the card. Further, the government presented evidence that Defendant attended Medicaid billing training. Although Defendant denied attending all of the training, it was reasonable for the jury to reject this testimony in light of the trainer's testimony and Defendant's continuing education records. Finally, like Ms. Franklin-El, Defendant significantly profited from the scheme.

Defendant next argues that *United States v. Rahseparian*, 231 F.3d 1257 (10th Cir. 2000), mandates reversal of his health care fraud convictions. In *Rahseparian*, we found no evidence establishing that the defendant knew a fraudulent business was not legitimate. Four out of the five pieces of evidence the government relied upon were consistent with a lawful business. The final piece—the defendant's false exculpatory statements—was not enough, alone, to prove the defendant's knowledge and intent. Defendant claims evidence of his knowledge and intent is similarly lacking in this case, but we find the evidence of intent to be greater than in *Rahseparian*. Defendant's knowledge of Medicaid billing and The Great Meeting's billing practices, his misrepresentation of Gary H.'s addiction status in client care documents, his $5,000 a week profit from Medicaid proceeds, and his active steps to obtain others' Medicaid cards is enough to establish Defendant's intent to defraud.

Finally, Defendant complains about the prosecutor's conduct at trial. Although Defendant characterizes this final claim as a sufficiency challenge, it is more a claim of trial error. Specifically, Defendant contends the prosecutor's use

of the pronoun "they" to refer to the defendants at trial led the jury to confuse and conflate the evidence against Ms. Franklin-El with the evidence against Defendant. We disagree. Although the government's pigeonholing of the defendants is concerning, defense counsels' regular objections prevented jury confusion. The record reflects that the court largely sustained defense counsels' objections, requiring the prosecutor to refer to the defendants individually.[3] Although there were instances where the prosecutor's grouping of the defendants went unaddressed because defense counsel did not object, the court's overall pattern of sustaining the objections and correcting the prosecutor adequately signaled to the jury the need to individually view the evidence.

Taken in the light most favorable to the government, we conclude the evidence supports a finding beyond a reasonable doubt that Defendant knowingly and willfully executed, attempted to execute, or aided and abetted the execution of a scheme to defraud a health care benefits plan. Accordingly, we sustain his convictions of health care fraud.

## B.     Obstruction

Defendant next argues the evidence was insufficient to support his

---

[3] Because there is no indication Defendant complained of the court's cure—instructing the prosecutor to separate out the defendants—this claim is subject to plain error review. *See United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008). However, even if we review the ruling *de novo*, *see United States v. Pulido-Jacobo*, 377 F.3d 1124, 1134 (10th Cir. 2004), it fails.

conviction for obstructing justice. Defendant concedes our review is for plain error, as he did not move for judgment of acquittal on the obstruction conviction at trial. Therefore, to secure relief, Defendant must show: (1) an error, (2) that is plain (clear or obvious under current law), and (3) that affects substantial rights. *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007). If Defendant satisfies these criteria, we may exercise discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotations marks omitted). We find this to be one of the unusual cases where Defendant has met this standard.

To establish Defendant obstructed or attempted to obstruct justice, the government had to show he willfully prevented, obstructed, misled, or delayed "the communication of information or records relating to a violation of a Federal health care offense to a criminal investigator" or attempted to do so. 18 U.S.C. § 1518. Defendant contends the government failed to establish willfulness or intent. We agree.

The government largely relies upon evidence that only after Defendant was served with a federal subpoena seeking specific client records (including records of preauthorizations for the Medicaid claims), did The Great Meeting submit requests for preauthorization to the regional center. Defendant contends this evidence is meaningless because the government presented no evidence tying him to any attempts to submit preauthorization forms. In its responsive brief, the

-13-

government does nothing to address this concern. The government does not establish Defendant's individual participation in these submissions, nor does it appear from the record that it could do so. The evidence shows Ms. Franklin-El, not Defendant, spoke with a Kansas Medicaid consultant while she filled out several of these client preauthorizations forms. Therefore, evidence relating to the belated preauthorizations is inapposite to Defendant's willfulness or intent.

The government also presented evidence that Ms. Franklin-El transferred more than $162,000 in Medicaid proceeds from her personal account to a newly-created Success, Inc., savings at a commercial bank. This—again—relates only to Ms. Franklin. It does not link Defendant to any effort to hide wrongdoing.

The government's strongest evidence is that, near the time he received the federal subpoena, Defendant went to the home of the company's accountant and asked him to recreate the transactions of The Great Meeting. Defendant explained to the accountant that he and Ms. Franklin-El might be under investigation. He asked the accountant to go over all their transactions and determine whether they were business-related or personal. The accountant characterized this as a request to "help them look over their receipts and help them get everything in order." (R. Vol. 16 at 1429.) Nothing in the accountant's testimony would support an inference that Defendant exhibited any intent to prevent, obstruct, mislead, or delay. Accordingly, the evidence is insufficient for a jury to reasonably conclude beyond a reasonable doubt that Defendant was

trying to obstruct justice.

In light of this lack of evidence, we find the court plainly erred by allowing this conviction to stand. This error certainly affected Defendant's substantial rights. Moreover, our failure to mandate reversal of a conviction resting on insufficient evidence in this case would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Goode*, 483 F.3d at 681. Therefore, we must reverse Defendant's conviction for obstruction of justice.

## II.  Motion for a New Trial

Defendant next claims entitlement to a new trial due to prosecutorial misconduct in closing argument, erroneous admission of 404(b) evidence, and cumulative error. None of these claimed errors were raised below, so all are subject to plain error review. *See Goode*, 483 F.3d at 681.

## A.    Prosecutorial Misconduct

Defendant contends the prosecutor committed misconduct in her rebuttal argument by improperly vouching for a witness, calling Defendant a liar, aligning Defendant with a criminal and former addict, and improperly attacking the defense expert.

In reviewing Defendant's claim of prosecutorial misconduct, the main issue to be decided is not the appropriateness of the prosecutor's comments but, rather, whether the comments constitute misconduct rising to the level of plain error.

This distinction is important because the line between proper and improper advocacy is inexact, *see United States v. Young*, 470 U.S. 1, 7 (1985), and even improper conduct does not in all cases warrant reversal of a conviction. "'[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.'" *United States v. Kravchuck*, 335 F.3d 1147, 1153 (10th Cir. 2003) (quoting *Young*, 470 U.S. at 11).

Defendant first argues the prosecutor improperly vouched for the credibility of a witness, LaShekia Edwards, by saying, "And when she had no reason to lie, she told them the truth about who was in charge of the billing. It was Peggy." (R. Vol. 14 at 2462.) An argument is only improper vouching "'if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurance of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.'" *United States v. Magallanez*, 408 F.3d 672, 680 (10th Cir. 2005) (quoting *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990)). With this comment, the prosecutor expressed no personal belief about Ms. Edwards' veracity, nor did she make any personal assurances or reference information outside the record. Instead, she simply argued Ms. Edwards had no motive to lie at the time she spoke with investigative agents.

-16-

This argument is not plainly erroneous.

With the same breath he uses to allege the prosecutor vouched for Ms. Edwards' credibility, Defendant claims the prosecutor improperly denounced her by commenting, "The government witness did not take the stand and tell Whoppers like the defendant and the witness LaShekia did."  (R. Vol. 14 at 2465.)  Defendant also argues the prosecutor improperly impugned his credibility and that of Ms. Edwards with the following statements:

> The defendants took the stand in their own defense and sponsored some witnesses in what I'm going to call their Burger King defense, because boy, we heard some Whoppers.

(*Id.* at 2461.)

> Next, we have the defendants who simply did not tell you the truth, ladies and gentlemen.

(*Id.* at 2462.)

> [O]r you can believe the defendants' tall ta[le] and LaShekia whose lies have been repeatedly highlighted during the trial.  You can believe the witnesses who have no incentive to lie, and whose every word is corroborated by a document or another witness; or you can believe the two people in this courtroom who have every incentive to lie.

(*Id.* at 2468.)

In short, Defendant objects to the prosecutor's comments on the veracity and motive for dishonesty of Ms. Edwards and Defendant.  However, "[w]e have not . . . established that referring to testimony as a lie constitutes per se prosecutorial misconduct."  *United States v. Hernandez-Muniz*, 170 F.3d 1007,

1012 (10th Cir. 1999). Further, the prosecutor placed her somewhat indelicate comments within the context of the evidence. For instance, after saying the defendants had not told the truth, the prosecutor continued, "[t]heir testimony is completely inconsistent with the evidence and common sense." (R. Vol. 14 at 2462.) The prosecutor then detailed the inconsistencies as she saw them. The prosecutor provided similar context for her statement about Ms. Edwards: "Her credibility was completely demolished by Agent Harshaw['s] rendition of all the false denials she made on the witness stand." (*Id.* at 2461–62.) On cross-examination, Ms. Edwards had denied making various statements to investigators, but an investigator later rebutted her denials. In light of this, the prosecutor's comment on Ms. Edwards' credibility and motive for dishonesty was grounded in evidence. Indeed, the prosecutor's attempt to contrast the witnesses' testimony with the evidence is akin to reminding the jury of the need to determine witness truthfulness.

Additionally, many of the prosecutor's comments were responsive to defense counsel's closing in which he discussed numerous witnesses' credibility and questioned their motives to tell the truth. In particular, defense counsel focused on Defendant's credibility, even going so far as to say, "when Johnnie Franklin-El took the witness stand, he absolutely told you the entire truth." (*Id.* at 2447.) "Prosecutors have considerable latitude to respond to an argument made by opposing counsel." *Hernandez-Muniz*, 170 F.3d at 1012. Accordingly, in

-18-

context, we do not believe these remarks by the prosecutor to be misconduct.

Next, Defendant claims the following testimony prejudiced him by aligning him with Shelly Harding, a former drug addict with a criminal history. First, the prosecutor elicited testimony about Ms. Harding from Ms. Franklin-El during cross-examination:

> Q.  Did you know Shelly has a similar background to you, don't you, ma'am? Including time in prison, including addiction, isn't that right?
> A.  Yes.
> Q.  And that's probably one of the reasons you're best friends, isn't it, you have a lot in common, right?
> A.  I wouldn't say that.
> Q.  And she ran a drug and alcohol abuse treatment [center] in Wichita called A New Beginning, didn't she?
> A.  I know she worked there.
> Q.  She and her husband Lorenzo ran that, didn't they?
> A.  To my knowledge.
> Q.  And A New Beginning was a Medicaid provider before you were, isn't that correct?
> A.  I guess so. Now, I really don't know what A New Beginning did.
> Q.  In fact, you talked a lot with Shelly Harding . . . about the fact that she was making a lot of money from Medicaid, didn't you?
> A.  I did.

(R. Vol. 13 at 2215–16.) The prosecutor then remarked during her rebuttal argument, "Who were the two top folks in terms of payment per beneficiary? The defendants and best friend Shelly Har[d]ing at A New Beginning. Birds of a feather, ladies and gentlemen." (R. Vol. 14 at 2467.)

Defendant argues the prosecutor's references to Ms. Harding had the

-19-

sole purpose of showing Defendant's own propensity to commit health care fraud. Generally, propensity evidence consists of such things as a "*defendant*'s prior trouble with the law, specific criminal acts, or ill name among his neighbors." *United States v. Enjady*, 134 F.3d 1427, 1430 (10th Cir. 1998) (emphasis added) (internal quotation marks omitted). It is not clear how evidence of a third party's history would constitute propensity evidence, creating "the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment." *Old Chief v. United States*, 519 U.S. 172, 181 (1997) (internal quotation marks omitted). This is especially true in this case, where the prosecutor focused mainly on Ms. Franklin-El's relationship with Ms. Harding.

Moreover, the evidence had a direct purpose. It was introduced to show where Ms. Franklin-El may have obtained information about making money from Medicaid. Although Ms. Franklin-El denied obtaining advice from Ms. Harding, the record shows the two were best friends and talked about Medicaid money. The government introduced evidence that The Great Meeting ranked second out of seventy-nine drug and alcohol treatment providers in Kansas for Medicaid dollars received per beneficiary from June 2003 through November 2004. The only company ranked higher was A New Beginning, Ms. Harding's company. Finally, the government

introduced evidence that Ms. Franklin-El attempted to use Ms. Harding as an expert in The Great Meeting's administrative hearings. In light of all this, the prosecutor's comments were relevant to show Ms. Franklin-El may have been patterning her scheme on the practices of Ms. Harding.

Defendant also claims the prosecutor improperly attacked his expert by saying in rebuttal, "The defendants had to go all the way to Missouri to find some blow hard expert who talked a lot but said very little of significance in this case." (R. Vol. 14 at 2460.) The government maintains this comment accurately reflected the expert's demeanor and what the government characterizes as his lengthy and irrelevant narratives. Accurate or not, the use of the term "blow hard" does not constitute prosecutorial misconduct per se, let alone misconduct constituting plain error. The main effect of the prosecutor's comment was to remind the jury of its duty to scrutinize and weigh all witness testimony, including that of experts. Therefore, the court did not plainly err in allowing the statement. Moreover, although Defendant concedes the plain error standard is appropriate to review his claims of prosecutorial misconduct, he makes no attempt to establish prejudice. For these reasons, we affirm the district court.

## B.    Rule 404(b) Evidence

Defendant next argues the court admitted evidence of his wrongful

-21-

receipt of welfare benefits in violation of Rule 404(b) of the Federal Rules of Evidence.

We review this claim for plain error. Initially, Defendant filed a Motion in Limine with regard to the welfare benefits issue. When the court addressed the motion, it noted the evidence was likely admissible, but delayed issuing a ruling because of insufficient information on "exactly what this evidence is going to be." (R. Vol. 16 at 1547.) The court then instructed defense counsel to object at the appropriate time, so it could "make timely rulings." (*Id.*) Because defense counsel made no later objection, the claim is properly reviewed for plain error. However, even under an abuse of discretion standard, we would affirm.

Rule 404(b) governs the admission of "other crimes, wrongs, or acts." Fed. R. Evid. 404(b). A court ruling on Rule 404(b) admissibility must examine the following four factors: "(1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests." *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006) (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

The first reference to Defendant's receipt of welfare benefits arose when the prosecution cross-examined Ms. Franklin-El about "repayment of

loan" notations she wrote on many of the weekly checks issued to Defendant by The Great Meeting. Ms. Franklin-El denied knowing Defendant received welfare and general assistance in 2004—the same time period in which he was paid $5,000 a week from Medicaid proceeds. The prosecutor inquired into the issue no further. Then, during direct examination, Defendant tried to explain why he was receiving state benefits and during which time periods it was received. Defendant testified he stopped using the welfare benefits before he received his first paycheck from Ms. Franklin-El. It was defense counsel who first referred to the conduct as "welfare fraud" in eliciting testimony from Defendant. (R. Vol. 13 at 2260.) And defense counsel first questioned Defendant about the civil petition filed against Defendant claiming he defrauded Kansas Social and Rehabilitation Services, opening the door for the prosecutor's cross-examination.

In short, very little evidence of Defendant's receipt of welfare benefits was introduced, and the most damaging evidence came from Defendant himself. In light of this, it is difficult to see how the court erred or abused its discretion by admitting the evidence. Indeed, the evidence may even be considered part of the ongoing narrative necessary to describe the context of the charges. The prosecutor used the evidence to establish that the money The Great Meeting paid to Defendant could not have been

in repayment of loans because if Defendant was so indigent as to need state assistance, he would be unable to make such loans in the first place.

Defendant also appeals the admission of evidence of his drug addiction and criminal background, but he fails to discuss any of the facts surrounding this evidence. Our review of the record reveals no indication Defendant objected to this evidence before the trial court. Moreover, Defendant himself openly testified to his criminal background and prior drug addiction on direct examination. The testimony seems geared toward showing Defendant's longstanding reformation and rehabilitation. Consequently, we cannot say the district court erred by admitting this evidence.

## C.    Cumulative Error

Lastly, Defendant claims the effect of cumulative error at his trial mandates the reversal of his convictions. He argues the evidence against him is weak enough that the improper statements and prejudicial evidence became the lynchpin of the jury verdict. The government contends simply that none of Defendant's claims of error actually amounted to error.

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."

*United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990). The "cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (internal quotation marks omitted); *see also Workman v. Mullin*, 342 F.3d 1100, 1116 (10th Cir. 2003) (noting that cumulative error analysis requires at least two errors). Here, Defendant has failed to establish the existence of multiple errors. Thus, we refrain from engaging in a cumulative error analysis.

## CONCLUSION

For the foregoing reasons, we **REVERSE** Defendant's conviction for obstruction of justice, but otherwise **AFFIRM** the district court.