**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

v.

KEVIN HINSON,

              Defendant - Appellant.

No. 11-3286
(D. Ct. Nos. 6:11-CV-01082-JTM
and 6:07-CR-10076-JTM-1)
(D. Kan.)

**ORDER**

Before **KELLY, HARTZ,** and **HOLMES**, Circuit Judges.

        On February 10, 2012, the court issued an Order Denying A Certificate of

Appealability in connection with this proceeding.  The appellant, Kevin Hinson, filed a

petition seeking panel rehearing and rehearing en banc.

        The request for rehearing en banc was transmitted to all the judges of the court

who are in regular active service.  As no member of the panel and no judge in regular

active service on the court requested that the court be polled, that part of the petition

seeking rehearing en banc is denied pursuant to Fed. R. App. P.  35.

        The panel, however, grants rehearing for the limited purpose of making a minor,

non-substantive change to its order denying a certificate of appealability.  The change is

to footnote 3, found on page 4 of the order.  The order as modified by the panel shall be

issued as a new decision addressing Mr. Hinson's request for a certificate of appealability. The result, however, does not change.

Because the panel has fully considered all of Mr. Hinson's other arguments as to why rehearing should be granted, and because the change resulting from this limited granting of rehearing is non-substantive, Mr. Hinson may not file a second or successive rehearing petition. See 10th Cir. R. 40.3.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

by:
Douglas E. Cressler
Chief Deputy Clerk

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 11, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

<table>
<tr><td>

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

KEVIN HINSON,

     Defendant-Appellant.

</td><td>

No. 11-3286
(D.C. Nos. 6:11-CV-01082-JTM and
6:07-CR-10076-JTM-1)
(D. Kan.)

</td></tr>
</table>

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

Kevin Hinson, a federal prisoner, seeks a certificate of appealability ("COA") to challenge the district court's denial of his motion for relief under 28 U.S.C. § 2255.[1] We deny Mr. Hinson's application for a COA and dismiss this matter.

---

[*]     This Order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1]     Because Mr. Hinson is represented by counsel, his filings are not entitled to the generous construction that we ordinarily afford pro se pleadings. *See Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

# I. Background

The case against Mr. Hinson began with the investigation of suspected drug dealer Mac Pingry. After police discovered methamphetamine and marijuana at Mr. Pingry's residence in November 2005, Mr. Pingry fingered Mr. Hinson as his supplier and agreed to assist the police by conducting a controlled buy from him. That transaction took place several days later. In the parking lot of an auto-parts store, while under continuous police surveillance, Mr. Pingry bought a quarter-pound of "ice" (high-grade methamphetamine) from Mr. Hinson for $3,250 in cash. The controlled buy eventually led to Mr. Hinson's arrest, and he was indicted under four counts pertaining to possession and distribution of methamphetamine. *See United States v. Hinson*, 585 F.3d 1328, 1331–32 (10th Cir. 2009).[2]

At trial, the government put on "substantial evidence" showing that Mr. Hinson was Mr. Pingry's drug supplier. *Id.* at 1332. Mr. Pingry testified that he regularly purchased methamphetamine from Mr. Hinson—"anywhere from a quarter pound to a pound" several times a week. *Id.* The government corroborated Mr. Pingry's testimony with phone records showing a large number of calls between Mr. Pingry and Mr. Hinson during the relevant time period and a large number of calls between Mr. Hinson and a

---

[2]  Specifically, Mr. Hinson was indicted for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and using telephones in facilitating the knowing and intentional distribution of methamphetamine in violation of 21 U.S.C. § 843(b).

certain "Oscar," Mr. Hinson's alleged supplier. In addition, the evidence revealed that Mr. Hinson possessed and transacted in large amounts of cash even though Internal Revenue Service records showed that he had very little income. A final bit of evidence, relevant to the instant matter, was testimony from Detective Hamilton that her investigation of Mr. Hinson began when she heard from a different confidential informant that a fellow by "the name of Kevin, white male, supplied Mac Pingry with methamphetamine ice." *Id.* (quoting Aplt. App. at 226) (internal quotation marks omitted). The jury found Mr. Hinson guilty on all counts, and he was sentenced to 240 months' imprisonment. His conviction and sentence were affirmed on direct appeal. *Id.* at 1341.

In March 2011, Mr. Hinson filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, claiming that his trial counsel was constitutionally deficient. The district court denied the motion and also denied a COA. Mr. Hinson now seeks a COA from this court, reasserting his ineffective-assistance claim.

## II. Standard of Review

A COA is a jurisdictional prerequisite to our review of the merits of a § 2255 appeal. *See* 28 U.S.C. § 2253(c)(1)(B); *Gonzalez v. Thaler*, 132 S. Ct. 641, 649 (2012). We will issue a COA "only if the [movant] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "reasonable jurists could debate whether . . . the [§ 2255 motion] should have been resolved in a different manner or that the issues presented were

-3-

adequate to deserve encouragement to proceed further." *United States v. Tony*, 637 F.3d 1153, 1157 (10th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). When, as here, the district court denies a motion on the merits, the movant carries his burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *United States v. Bedford*, 628 F.3d 1232, 1234 (10th Cir. 2010) (quoting *Slack*, 529 U.S. at 484) (internal quotation marks omitted).

### III. Discussion

Before the district court, Mr. Hinson asserted eight reasons why his trial counsel rendered constitutionally ineffective assistance. In his COA application before us, Mr. Hinson has winnowed those reasons down to five. He claims that counsel was ineffective for (1) failing to obtain from the government various materials that would have allowed him to impeach Mr. Pingry, (2) failing to impeach Mr. Pingry with the specific terms of his plea agreement, (3) failing to object to misleading arguments by the government at trial regarding favorable treatment of Mr. Pingry for his testimony, and (4) failing to object to the admission of hearsay testimony at trial. Mr. Hinson also asserts (5) that the cumulative effect of counsel's failures prejudiced his defense.[3]

---

[3] For purposes of clarity, we note the following three items. First, two of the eight arguments urged by Mr. Hinson in the district court have been merged into a single argument on appeal. Specifically, Mr. Hinson's separate arguments below that counsel failed to request Mr. Pingry's PSR and failed to request Mr. Pingry's interview statements and informant agreement became a single argument in his COA application—*viz.*, that counsel was ineffective for failing to obtain from the government various materials that would have allowed him to impeach Mr. Pingry. We address this argument at Part III.A,

While the Sixth Amendment guarantees Mr. Hinson "the Assistance of Counsel for his defence," U.S. Const. amend. VI—a right that secures not merely the presence of an attorney but the "reasonably effective assistance" thereof, *Strickland v. Washington*, 466 U.S. 668, 687 (1984)—Mr. Hinson's claim that counsel was ineffective faces a double hurdle. He "must show both that his counsel's performance 'fell below an objective standard of reasonableness,' *and* that 'the deficient performance prejudiced the defense.'" *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687–88). Failure to satisfy either prong is dispositive. *Id.*

We review counsel's performance in light of "prevailing professional norms," *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted), and our analysis is "highly deferential," *Byrd*, 645 F.3d at 1168 (quoting *Hooks v. Workman*, 606 F.3d 715, 723 (10th Cir. 2010)) (internal quotation marks omitted). We indulge a "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and that 'the challenged action might be considered sound trial strategy.'" *Fairchild v. Workman*, 579

---

*infra*. Second, two other arguments that Mr. Hinson presented to the district court—that counsel was ineffective for failing to obtain suppression of evidence seized from his truck, Aplt. App. at 435 (Dist. Ct. Mem. & Order, filed Aug. 1, 2011), and failing to object to the sentence imposed, *id.* at 435–36—have been abandoned because they were not presented in his COA application. Finally, Mr. Hinson argued in the district court that counsel was ineffective for failing to move for a mistrial after the admission of hearsay testimony at trial, *see id.* at 434, and he argues in his COA application that counsel was ineffective for failing to *object* to the admission of this testimony. We view these arguments as materially identical, and we address the argument on the merits at Part III.D, *infra*.

F.3d 1134, 1140 (10th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). To be constitutionally deficient, an attorney's performance "must have been completely unreasonable, not merely wrong." *Byrd*, 645 F.3d at 1168 (quoting *Hooks*, 606 F.3d at 723) (internal quotation marks omitted).

Even if a defendant can carry his burden under the first prong of *Strickland*, he must still show prejudice. Prejudice means "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.* (quoting *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009)) (internal quotation marks omitted). "[M]ere speculation" does not suffice. *Id.* Counsel's errors must be "so serious" as to undermine our confidence in the trial's outcome. *See id.* (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks omitted).

We are not persuaded that Mr. Hinson's trial attorney was constitutionally deficient, nor are we convinced that any alleged errors were prejudicial. We further believe that these conclusions are not debatable among jurists of reason. We therefore deny a COA.

## A.

Mr. Hinson first claims that his attorney was ineffective for failing to obtain from the government various materials that would have allowed him to impeach the testimony of Mr. Pingry, the government's key witness in the case. Specifically, he states that counsel should have asked the court to order the government to produce (1) an interview of Mr. Pingry recorded on November 10, 2005, (2) a police report relating to an interview

of Mr. Pingry on December 13, 2005, (3) Mr. Pingry's informant agreement, and (4) Mr. Pingry's presentence report ("PSR"). Mr. Hinson tells us that these materials would have provided "significant ammunition with which to impeach [Mr.] Pingry." Aplt. Opening Br. at 15. We are not persuaded.

Mr. Hinson's attorney impeached Mr. Pingry's testimony in a number of ways, highlighting inconsistencies in Mr. Pingry's statements, his prior lies to police, and his bias due to the plea agreement he reached with the government in exchange for his testimony. *See* Aplt. App. at 620–53, 660–63 (Tr. Test. of Mac Pingry, held Nov. 28, 2007). As the district court found, Mr. Pingry's credibility "was addressed fully by both parties." *Id.* at 432–33 (Dist. Ct. Mem. & Order, filed Aug. 1, 2011). We presume that counsel's decisions represented "sound trial strategy," *Fairchild*, 579 F.3d at 1140 (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted), and Mr. Hinson fails to overcome that presumption.

The November 10, 2005, interview of Mr. Pingry and the December 13, 2005, report held little, if any, impeachment value. For example, Mr. Hinson points to purported discrepancies between Mr. Pingry's statements and testimony by Mr. Pingry and others at trial. However, we have carefully reviewed the record, and it is not clear to us that many of Mr. Pingry's pre-trial statements reveal discrepancies with trial testimony at all. Furthermore, to the extent that Mr. Pingry's pre-trial statements could conceivably be read as revealing such discrepancies, they are of a minor sort, and competent counsel could have reasonably concluded—given the considerable impeachment to which Mr.

Pingry already was subjected—that employing these possible discrepancies would have been cumulative and of no material effect. In particular, we note that Mr. Pingry's statements in his November interview are far from pellucid and, at best, would have provided a very thin thread upon which to hang a line of cross-examination. For example, contrary to Mr. Hinson's assertions, we are hard-pressed to read Mr. Pingry's convoluted statements in the November interview as indicating that "he dealt with the Mexican guys directly," Aplt. Opening Br. at 27, which would have contradicted Mr. Pingry's trial testimony that Mr. Hinson dealt with the Mexican drug suppliers.

Furthermore, Mr. Hinson fails to explain how the informant agreement could have been used for impeachment purposes, speculating only that, had the agreement been available, counsel might have shown that Mr. Pingry breached it. Finally, Mr. Hinson argues that if counsel had requested Mr. Pingry's PSR, he could have shown that Mr. Pingry's sale of 70 pounds of methamphetamine for Mr. Hinson had not been considered relevant conduct for sentencing purposes—a fact presumably going to Mr. Pingry's bias. However, Mr. Pingry admitted on both direct and cross-examination that exclusion of the sale was part of his plea agreement, *see* Aplt. App. at 661–62, and as the district court pointed out, the plea agreement was admitted into evidence for the jury to reference, *id.* at 432. Counsel's requesting the PSR for this purpose would have been unnecessary and cumulative. We therefore cannot say that counsel's performance "fell below an objective standard of reasonableness." *Byrd*, 645 F.3d at 1167 (quoting *Strickland*, 466 U.S. at 687–88).

**B.**

In a similar vein, Mr. Hinson claims that his attorney should have cross-examined Mr. Pingry on the specific terms of his plea agreement with the government. Mr. Hinson faults counsel for failing to "establish the specific charges that were dismissed as part of [Mr.] Pingry's plea agreement" and for failing to "establish the sentences [Mr.] Pingry would have faced but for his plea agreement." Aplt. Opening Br. at 20. However, contrary to Mr. Hinson's assertion, counsel explored the terms of the plea agreement in cross-examining Mr. Pingry. His questioning revealed that Mr. Pingry had been allowed to plead to only two of the six counts on which he was originally charged, Aplt. App. at 662, and that Mr. Pingry's sale of methamphetamine for Mr. Hinson would not be considered for sentencing purposes, *id.* at 660–61. We afford attorneys a good deal of leeway under the *Strickland* standard, *see Worthington v. Roper*, 631 F.3d 487, 503 (8th Cir. 2011), and we are convinced that counsel's performance was reasonable and grounded in sound tactical decisionmaking. We refuse to second-guess it. *See United States v. Aptt*, 354 F.3d 1269, 1284 (10th Cir. 2004).

**C.**

Mr. Hinson sees constitutional deficiency in his attorney's failure to object to allegedly misleading arguments by the government regarding favorable treatment of Mr. Pingry for his testimony. At trial, the government called Mr. Pingry's attorney to the stand to establish that the government had neither promised to file, nor filed, a motion under Rule 35 of the Federal Rules of Criminal Procedure for reduction of Mr. Pingry's

sentence. Aplt. App. at 806–13 (Tr. Test. of Phillip White, held Nov. 29, 2007). Also, in closing arguments, the government told the jury that there was no deal with Mr. Pingry, and that while Mr. Pingry "hope[d]" for a sentence reduction in exchange for his testimony, he was not guaranteed anything. *Id.* at 1044 (Gov't's Closing Arguments, held Dec. 3, 2007). All of this was true. Mr. Hinson complains, however, that the day after trial, the government "filed two motions under seal in [Mr.] Pingry's case, and a short time later, [Mr.] Pingry's sentence of 63 months was reduced to time served." Aplt. Opening Br. at 19.

This avails Mr. Hinson nothing. The government denied the existence of an agreement with Mr. Pingry regarding sentence reduction, and there is nothing to call the veracity of that representation into doubt. Moreover, as the district court found, the government's questions and statements at trial did not imply "that a Rule 35 motion would *never* be filed on behalf of [Mr.] Pingry." Aplt. App. at 431–32. Any objection by trial counsel on these grounds would have been meritless and overruled, and counsel was therefore not deficient for failing to object.

## D.

Mr. Hinson faults his attorney for failing to object when the government elicited hearsay testimony from Detective Hamilton. Detective Hamilton testified that a confidential informant had told her that a person named "Kevin, white male, supplied Mac Pingry with methamphetamine ice." Aplt. App. at 666 (Tr. Test. of Det. Sara Hamilton, held Nov. 28, 2007). Mr. Hinson's counsel did not object to this testimony,

hearsay though it was.

On direct appeal, Mr. Hinson sought to have his conviction thrown out on the basis of this testimony. Because no objection to it had been lodged, this court reviewed the claim for plain error. We acknowledged that the detective's statement was impermissible hearsay and thus that its admission into evidence was erroneous. *See Hinson*, 585 F.3d at 1337. We concluded, however, that the error did not affect Mr. Hinson's "substantial rights" because he could not "show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *Id.* at 1338 (quoting *United States v. Portillo-Vega*, 478 F.3d 1194, 1202 (10th Cir. 2007)) (internal quotation marks omitted).

The substantial-rights prong of plain-error review is identical in form and substance to the prejudice prong of *Strickland*, which requires a defendant to show "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Byrd*, 645 F.3d at 1168 (quoting *Challoner*, 583 F.3d at 749) (internal quotation marks omitted). As a result, our previous resolution of Mr. Hinson's claim on direct appeal controls the outcome here. Assuming *arguendo* that counsel was deficient for failing to object to Detective Hamilton's testimony, that deficiency was not prejudicial. As we previously found:

> We cannot say that the admission of Detective Hamilton's hearsay testimony affected the outcome of Hinson's trial. In addition to Hamilton's statement that she had heard a man named Kevin was Pingry's supplier, Pingry himself testified that Hinson was his supplier, and his testimony was corroborated by evidence produced during a

controlled buy. It is unlikely that the officer's additional statements on this issue had any serious impact on the outcome of the trial . . . .

*Hinson*, 585 F.3d at 1338.

## E.

Lastly, Mr. Hinson alleges cumulative error, arguing that counsel's errors in the aggregate prejudiced his defense, even if no single error in isolation did so. This argument fails as a matter of law. As the term "cumulative" suggests, "[c]umulative-error analysis applies where there are two or more actual errors. It does not apply . . . to the cumulative effect of non-errors." *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (quoting *Castro v. Ward*, 138 F.3d 810, 832 (10th Cir. 1998)) (internal quotation marks omitted). Thus, we undertake a cumulative-error analysis only if there are at least two errors. *See United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009). Here, Mr. Hinson has established, at most, one error (i.e., counsel's failure to object to the admission of hearsay). Thus, we must "refrain from engaging in a cumulative error analysis." *Id.*

## IV. Conclusion

We conclude that Mr. Hinson's claims of ineffective assistance of counsel fail. Thus, we are confident that reasonable jurists would agree with the district court's decision to reject them. Accordingly, we conclude that Mr. Hinson is not entitled to relief

under 28 U.S.C. § 2255.  We therefore **DENY** Mr. Hinson a COA and **DISMISS** this matter.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge