FILED
United States Court of Appeals
Tenth Circuit

February 3, 2009

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

PEGGY FRANKLIN-EL,

      Defendant-Appellant.

No. 07-3257

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**
**(D.C. No. 5:06-CR-40011-MLB)**

Rick E. Bailey, Conlee, Schmidt & Emerson, L.L.P., Wichita, Kansas, for Defendant-Appellant.

Tanya J. Treadway, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Topeka, Kansas, for Plaintiff-Appellee.

Before **HOLMES**, **McKAY**, and **BALDOCK**, Circuit Judges.

**McKAY**, Circuit Judge.

Defendant Peggy Franklin-El appeals her convictions on fifty-two counts of healthcare fraud and one count of obstruction of justice. The principal issue on appeal is whether sufficient evidence supports these convictions. In addition,

Defendant contends the court erred by declining to dismiss the health care fraud charges as unconstitutionally vague. Finally, Defendant argues her sentence was procedurally and substantively unreasonable. We affirm her conviction and sentence.

## BACKGROUND

In 1993, Defendant and her spouse, Johnnie Franklin-El, incorporated The Great Meeting Is On For Your Success, a nonprofit business licensed to provide outpatient drug and alcohol treatment services. They jointly owned and operated the business, with Defendant working as Executive Director and Mr. Franklin-El working as Program and Education Director. According to testimony, Defendant handled the financial aspects of the business, and both she and Mr. Franklin-El participated in its day-to-day operations and in client care. Defendant and Mr. Franklin-El were both certified drug and alcohol counselors who had been involved in the drug and alcohol treatment community for numerous years.

The record shows that from 1993 to 2003, The Great Meeting survived largely on income from fund-raising. Then, in 2003, the nonprofit became eligible to bill Medicaid. Medicaid only pays for drug or alcohol treatment for beneficiaries who are addicted. Before receiving Medicaid funds in Kansas, a Medicaid-trained counselor must assess the beneficiary, then complete a Kansas Client Placement Criteria form and submit it to a regional assessment center. Employees at the center assess and approve or deny services. Medicaid pays for

limited addiction services through programs such as The Great Meeting—essentially, counseling and case management (facilitating access to ancillary services).

According to testimony, Defendant and Mr. Franklin-El both attended Medicaid billing training in August 2003. From July 2003 through November 2004, The Great Meeting submitted 1331 claims to Medicaid for drug and alcohol services. Counts two through fifty-three of the indictment are representative of these. A billing expert testified that she reviewed all 1331 claims and found them all to be false and fraudulent. A medical expert who reviewed the fifty-two client files supporting the charges agreed those claims were false in numerous respects and should not have been paid. The experts testified to several types of falsities, corroborated by testimony from fact witnesses and other evidence introduced at trial.

First, the experts testified that The Great Meeting submitted claims for drug abuse treatment for seventeen children under age twelve, even though the government introduced testimony that it is clinically impossible to diagnose or treat anyone under age twelve as an addict. Indeed, the evidence shows that two children were only weeks old and several were Defendant and Mr. Franklin-El's relatives. According to testimony, Defendant had learned in one administrative meeting that Medicaid computers do not edit for age. The Great Meeting received more than $420,000 from Medicaid for these seventeen children alone.

The experts also testified that in fifty of the fifty-two client files, the diagnosis on the initial assessment had been changed on the claims to reflect substance abuse. Put differently, the claims identified the clients as addicts even though, based on The Great Meeting's other documentation, they were not. A number of clients testified that their initial assessments contained false information and that The Great Meeting conducted only one assessment (while billing Medicaid for two). Some documents entered into evidence made it appear clients had received services they testified to never receiving. And clients testified they signed blank attendance logs which were later completed without their knowledge. Notably, Defendant's name appears on all the client KCPC forms, as well as on numerous initial assessments, attendance and transportation logs, and progress notes.

Further, the experts testified that The Great Meeting kept little-to-no documentation to support the Medicaid claims and that the company submitted claims for case management and addiction treatment although, according to its own documentation, it provided no such services. Instead, it offered only non-covered support services such as general counseling, anger management counseling, tutoring and homework help, after-school care, drug prevention education, transportation, and meals. At trial, Defendant testified in her own defense. She admitted that, at least as to the child clients, these support services did not constitute drug or alcohol treatment. Yet a report introduced into

-4-

evidence by defense counsel showed that, in a July 2004 administrative meeting held at Defendant's request, Defendant had admitted she knew she could only bill Medicaid for drug and alcohol-related services. She had also claimed it was out of The Great Meeting's scope to admit a client for anything other than drug or alcohol problems.

A verbatim transcript of an administrative hearing held on November 12, 2003, was also admitted into evidence at trial. At the hearing, an administrative officer reviewed two of The Great Meeting's claims for alcohol and drug treatment which had been denied by the Kansas Medikan program. Medikan is a state program similar to Medicaid in some ways, but with different enrollment criteria and stricter limitations on services. Defendant testified at this Medikan hearing that she believed the clients at issue to be covered by Medicaid at the time The Great Meeting provided services to them. Consequently, she made a variety of admissions about her knowledge of and participation in the Medicaid program. Among other things, Defendant admitted to having received the Medicaid provider manual in July 2003 and represented that she knew how to obtain preauthorization for Medicaid claims and, in fact, sought preauthorization for all clients. Yet, other evidence introduced at trial showed The Great Meeting obtained no preauthorizations from the regional assessment center for Medicaid clients. Additionally, Defendant attested at the hearing that The Great Meeting had provided drug and alcohol treatment to two clients, Rafael A. and James W.

But a government expert testified at trial that there is no indication any such treatment was provided.

For his part, a defense expert opined that all the problems cited by the government's experts occurred simply because the defendants lacked understanding of the assessment tools used.

In addition to the experts, fact witnesses testified that both Defendant and Mr. Franklin-El specifically recruited people with Medicaid cards, offering community services in exchange for Medicaid identification numbers. In fact, there was testimony that Defendant and Mr. Franklin-El encouraged at least one relative to obtain a Medicaid card and turn it over to The Great Meeting in exchange for a rent-free place to live. The relative did so. Later, after she had problems obtaining grief counseling due to The Great Meeting's use of her card, she confronted Defendant. Defendant threatened to throw her out of the house, and Mr. Franklin-El changed the locks on the house several times. Through all this, the relative received no counseling from The Great Meeting.

The government also introduced evidence that both Defendant and Mr. Franklin-El personally benefitted from the Medicaid payments, essentially using their business bank account as a personal account. Defendant made numerous personal purchases with the money. She admitted that after years of fund-raising and scraping by, she wanted Medicaid funds to pay her back. The government presented evidence that Defendant and Mr. Franklin-El ultimately received more

than $1.24 million in Medicaid money in less than seventeen months.

The record reveals that Defendant and Mr. Franklin-El became aware of the investigation when they received an initial request for records on September 16, 2004. Among other things, the request asked for proof the regional assessment center had authorized the billed services. On October 28, 2004, Defendant was served with a federal subpoena requesting the same records. Shortly thereafter, The Great Meeting started submitting preauthorization documents to the assessment center. In November 2004 alone, documents for thirty clients were submitted.

The government ultimately charged Defendant with (1) conspiracy, (2) obstruction, (3) fifteen counts of money laundering, and (4) fifty-two counts of health care fraud. She stood trial with Mr. Franklin-El and was convicted of all counts. However, the district court later declared a mistrial on the conspiracy count because of the jury's failure to identify which substantive crime Defendant and Mr. Franklin-El conspired to commit. The court also declared a mistrial on the money laundering counts because of a jury instruction error. The court granted the government's later motion to dismiss these charges. One additional count of conviction related to forfeiture. However, Defendant waived a jury trial on that count and has not contested the final forfeiture amount imposed.

At sentencing, the court considered a loss amount of more than $1.24 million. The court sentenced Defendant to ninety-two months (the low end of the

guideline range) on each of the fifty-two fraud counts and to sixty months on the obstruction count, all to run concurrently. The court also ordered Defendant to serve two years of supervised release.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant first challenges the sufficiency of the evidence supporting her convictions for health care fraud and obstruction.

### A. Health Care Fraud

Defendant's convictions for health care fraud were based upon the Medicaid claims The Great Meeting submitted. Defendant generally claims the government presented insufficient evidence of her intent to defraud, without addressing any of the fifty-two convictions individually.

We review this challenge *de novo*, determining whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *United States v. McPhilomy*, 270 F.3d 1302, 1307 (10th Cir. 2001) (internal quotation marks omitted). "By viewing the evidence in the light most favorable to the government, we necessarily resolve any conflicts in the evidence in favor of the government and we assume the trier of fact found that evidence credible." *United States v. Williamson*, 53 F.3d 1500, 1516 (10th Cir. 1995). Accordingly, we do not re-weigh conflicting evidence or consider the credibility

of witnesses.  *Id.*  "In this respect, we must defer to the jury's resolution."  *United States v. Brooks*, 438 F.3d 1231, 1236 (10th Cir. 2006).

To prove Defendant violated 18 U.S.C. § 1347, the government had to show she "knowingly and willfully" executed or attempted to execute a scheme to defraud a health care benefit program or a scheme to gain control of a health care benefit program's money or property through false pretenses, representations, or promises.  *See* 18 U.S.C. § 1347.  To establish knowledge and willfulness, "'the Government must prove that the defendant acted with knowledge that [her] conduct was unlawful.'"  *Bryan v. United States*, 524 U.S. 184, 191–92 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)).

We conclude the government presented sufficient evidence of Defendant's intent to defraud.  Perhaps most significantly, Defendant admitted knowing The Great Meeting could not bill Medicaid for services other than drug or alcohol treatment or for non-addicted clients.  Yet she also knew The Great Meeting did bill Medicaid even in cases where no drug or alcohol services were provided.  However, Defendant's role was not limited to knowledge alone.  At the Medikan hearing, Defendant admitted knowledge of and involvement in the company's Medicaid practices although she later denied knowledge and involvement at trial.  During the same hearing, Defendant represented that The Great Meeting had provided drug and alcohol treatment to two clients whose Medikan coverage was at issue.  Yet the government's experts testified there was no indication the

clients received any such treatment.

But this is not all. The government also established Defendant's long-term participation in the drug treatment industry, the steps she took to become a Medicaid provider, and her active, daily role at The Great Meeting. Defendant affirmatively signed children up for The Great Meeting, obtaining their Medicaid cards for billing purposes. She admitted knowing the children treated were not drug addicted and were receiving only support services, yet forms listing her as the screener indicated the children had addiction problems. The government also presented evidence that Defendant gave a relative a free place to live in exchange for the use of the relative's Medicaid card. Moreover, Defendant profited greatly from the scheme.

Defendant implies the evidence would only be sufficient to sustain her conviction if, after someone alerted her to problems with her billing practices, she continued the problematic practices. While such evidence would certainly be strong, it is not necessary to establish the intent to defraud.

Taken in the light most favorable to the government, we conclude the record contains evidence from which a jury could find beyond a reasonable doubt that Defendant knowingly and willfully executed or attempted to execute a scheme to defraud a health care benefits plan. Accordingly, Defendant's challenge fails and we sustain her health care fraud convictions.

**B.     Obstruction**

-10-

Defendant next argues the government presented insufficient evidence to support her obstruction conviction.

Both parties assume we should review the sufficiency of the evidence supporting Defendant's obstruction conviction *de novo*. However, it does not appear Defendant properly moved for judgment of acquittal on the obstruction count. Although the motion for acquittal is broad, it is also vague, and the supporting memorandum addresses only health care fraud. Therefore, the correct standard of review is plain error. However, even under a *de novo* standard of review, Defendant's challenge to her obstruction conviction fails.

To establish Defendant obstructed justice, the government had to show she willfully prevented, obstructed, misled, or delayed "the communication of information or records relating to a violation of a Federal health care offense to a criminal investigator." 18 U.S.C. § 1518(a). Defendant contends the government failed to establish willfulness.

The government presented evidence that after Defendant was served with a federal subpoena seeking specific client records (including records showing the Medicaid claims were preauthorized), The Great Meeting suddenly began submitting requests for preauthorization to the regional center. The government linked these requests specifically to Defendant—a consultant who helped develop the KCPC computer program testified that Defendant filled out several of these client preauthorization forms while speaking with her. Defendant argues the

-11-

timing of the requests does not establish she intended to obstruct the investigation. However, in light of the other evidence, the timing is significant. At the Medikan hearing, Defendant expressed her understanding of the preauthorization requirement and claimed she sought preauthorization for all clients. Yet, in reality, only after she had received a federal subpoena—nearly one year after the Medikan hearing—were preauthorizations actually sought. In the month after the subpoena alone, preauthorization requests for thirty clients were submitted. From this evidence, a jury could have concluded beyond a reasonable doubt that Defendant was trying to hide her earlier failure to obtain preauthorizations.

Additionally, the government presented evidence that Defendant transferred more than $162,000 in Medicaid proceeds from her personal account to a newly-created Success, Inc., savings account on November 1, 2004, shortly after receiving the federal subpoena. From this, a jury could infer Defendant was trying to legitimize the business accounts by restoring money to the business. Taken in the light most favorable to the government, the evidence submitted at trial is sufficient for a jury to find beyond a reasonable doubt that Defendant willfully obstructed the investigation. Consequently, we reject Defendant's challenge to the sufficiency of the evidence supporting her obstruction conviction.

## C. Motion for a New Trial

We likewise reject Defendant's contention that the district court abused its

discretion by denying her motion for a new trial based on the weight of the evidence. Our conclusion that the evidence was sufficient for a reasonable jury to find guilt beyond a reasonable doubt on the health care fraud and obstruction counts forecloses a finding that the court abused its discretion by not granting a new trial.

## II. Vagueness

Defendant next argues the health care fraud statute, 18 U.S.C. § 1347, is unconstitutionally vague as applied to her. The government contends Defendant failed to raise this issue of statutory vagueness before the trial court, so we should conduct plain error review. However, the record reveals Defendant challenged the statute on vagueness grounds in a joint motion to dismiss, then touched on it again in a motion for acquittal. Consequently, we review the issue *de novo*, as a question of law. *United States v. Platte*, 401 F.3d 1176, 1189 (10th Cir. 2005).

A statute is impermissibly vague "'if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.'" *Ward v. Utah*, 398 F.3d 1239, 1251 (10th Cir. 2005) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Additionally, a statute that authorizes or encourages arbitrary and discriminatory enforcement can be impermissibly vague. *Id.* Defendant bases her claim solely on the fair notice element.

Under 18 U.S.C. § 1347,

Whoever knowingly and willfully executes, or attempts to execute, a

-13-

scheme or artifice–
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,

> in connection with the delivery of or payment for health care benefits, items or services, shall be fined under this title or imprisoned not more than 10 years, or both.

Because this is an as-applied challenge, we consider this statute in light of the charged conduct. *United States v. LaHue*, 261 F.3d 993, 1005 (10th Cir. 2001).

Defendant's claim first fails because one "to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Id.* (internal quotation marks omitted). The evidence shows Defendant endeavored through misrepresentations to obtain Medicaid drug and alcohol benefits for non-addicted clients receiving non-covered services. Although the health care fraud statute does not (and could not) specify the innumerable fraud schemes one may devise, a person of ordinary intelligence would understand Defendant's conduct to be the very conduct contemplated by 18 U.S.C. § 1347.

Relying upon *Healthscript, Inc. v. State*, 770 N.E.2d 810 (Ind. 2002), Defendant argues that a determination of what the health care fraud statute prohibits would necessitate the incorporation and analysis of numerous regulations, a provider manual, a provider agreement, and various program policies and bulletins. She contends this breadth and complexity undermines fair notice of the illegality of her conduct. In *Healthscript*, the Indiana Supreme

Court assessed a state statute criminalizing the knowing or intentional filing of a Medicaid claim in violation of Indiana Code § 12-15. Because the statute cross-referenced a code comprised of 280 sections in 37 different chapters, the court concluded the statute prohibited violating "nothing more specific than this vast expanse of the Indiana Code." *Id.* at 816. Accordingly, the court found the statute provided insufficient notice.

However, unlike the Indiana statute in *Healthscript*, the federal health care fraud statute is not defined through other regulations. Section 1347 is simply a fraud statute, much like the mail fraud and wire fraud statutes (both of which have withstood similar challenges, *see United States v. Stewart*, 872 F.2d 957, 959 (10th Cir. 1989)). Moreover, the statute applies to fraud schemes against any health care benefit program, not just Medicaid. The complexity of Medicaid regulations does nothing to alter the straightforward nature of the health care fraud statute or the straightforward allegations of fraud lodged against Defendant.

Moreover, and significantly, the health care fraud statute requires a specific intent to defraud or misrepresent. The constitutionality of an arguably vague statutory standard is closely related to whether that standard incorporates a *mens rea* requirement. "The presence of a scienter inquiry can save an otherwise vague statute. 'The Supreme Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.'" *Ward*, 398 F.3d at 1252

(quoting *Murphy v. Matheson*, 742 F.2d 564, 573 (10th Cir. 1984) (internal quotation marks omitted)). "Although a specific intent requirement does not necessarily validate a criminal statute against all vagueness challenges, it does eliminate the objection that the statute punishes the accused for an offense of which he was unaware." *Stewart*, 872 F.2d at 959. In light of this, we reject the claim that the health care fraud statute is impermissibly vague.

### III. Sentencing

Finally, Defendant mounts both procedural and substantive challenges to the sentence the district court imposed.

### A. Procedural Reasonableness

Defendant first argues the court procedurally erred by improperly constraining its sentencing discretion. Because Defendant did not raise any procedural objections at sentencing, we review for plain error.

To secure relief under this standard, Defendant must show: (1) an error, (2) that is plain (clear or obvious under current law), and (3) that affects substantial rights. *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007). If Defendant satisfies these criteria, we may exercise discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotations marks omitted). To satisfy this fourth prong, Defendant must do more than "demonstrate that the district court felt particular sympathy for [her], and might impose a lesser sentence on remand."

*United States v. Trujillo-Terrazas*, 405 F.3d 814, 817–18 (10th Cir. 2005).

Instead, this court looks to evidence such as:

> a showing that the district court would likely impose a significantly lighter sentence on remand, a substantial lack of evidence to support the sentence the Guidelines required the district court to impose, and/or a showing that objective consideration of the 18 U.S.C. § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines.

*United States v. Thomas*, 410 F.3d 1235, 1249 (10th Cir. 2005).

Given the district court's application of sentencing principles no longer in effect,[1] the government "concedes that the defendant has shown (1) error (2) that

---

[1] Specifically, the district court stated:

> I'm guided by the so-called sentencing guidelines or now advisory sentencing guidelines. And those have been recently interpreted by the United States Supreme Court in a case called *Rita*, R-I-T-A. I don't agree with that case in some respects. I think that that case has taken a lot of discretion away from me. Discretion that I think I from experience and otherwise am able to exercise, should be able to exercise. . . . [A]s far as I'm concerned, we are back to guideline sentencing. I thought we'd gotten away from that, but I think we're back to that. . . . While the cases say that I have some discretion to move away from the guidelines either up or down, I do not find in this case, I've already mentioned this, that I have any grounds to do so. . . . [I]n order to depart from the guidelines, you have to be able to point to something either in the guidelines or something so-called out of the heartland of the guidelines to justify the departure. Very, very few departures handed down by district courts have been affirmed by the Court of Appeals. This has been going on for years. Again, I don't agree with that, but I have to live with it because that's my job. And I don't see any reason, nor would I have seen any reason to depart upward in this case if the guidelines—even if the government had asked for it, to try to fashion a sentence by departing

(continued...)

-17-

is now plain, and (3) that the error affected the defendant's substantial rights."

(Appellee's Br. at 52.) However, the government argues we should not notice the

error because Defendant cannot satisfy the fourth prong of plain error review. We

agree.[2]

At the time of sentencing in this case, our precedent mandated a

proportional review of the extent to which a sentence deviated from the guideline

range and the corresponding weight of the district court's justification for

granting the variance. *See United States v. Garcia-Lara*, 499 F.3d 1133, 1138

(10th Cir. 2007), *vacated*, 128 S. Ct. 2089 (2008). Defendant contends "[t]he fact

that the district court could not justify its desired departure in this case strongly

---

[1](...continued)
from the guidelines that I know won't be upheld on appeal. . . . So
I'm trying to find a sentence that I think will withstand—that's an
appropriate sentence, a fair sentence, but that will withstand scrutiny
. . .

(R., Vol. 5 at 81–82.)

[2] With respect to the fourth prong of plain error, Defendant argues only that the district court would impose a lighter sentence on remand. For this reason, we focus on this factor below. However, even going beyond this argument and reviewing the other non-exclusive factors set forth in *Thomas*, we are convinced Defendant has not satisfied the fourth prong. First, Defendant makes no claim of Booker error in this case. Next, as we discuss elsewhere in this opinion, sufficient evidence supports the counts of conviction and the sentence is substantively reasonable. There is no indication the sentence is otherwise insufficiently supported by evidence. Finally, as discussed below, there is evidence the court considered the factors of 18 U.S.C. § 3553(a), and Defendant has made no showing that further objective consideration of the § 3553(a) factors warrants a variance.

suggests that such departure would have been significant."[3]  (Appellant's Reply Br. at 8.)  In other words, she argues the court's language suggests it did not grant the large variance it wished to grant because the deviation would not withstand proportionality review.

While the district court's comments do indicate some dissatisfaction with the sentencing process and the court's perceived lack of discretion to vary from a guidelines sentence in this case, they do not establish the court would impose a significantly lighter sentence on remand.  In context, the court's protest does little more than target the court's mistaken perception that *Rita v. United States*, 127 S. Ct. 2456 (2007), limited its discretion to vary under § 3553(a).  The court spoke of the possibility of increasing the sentence also: "I don't see any reason, nor would I have seen any reason to depart upward in this case if the guidelines—even if the government had asked for it, to try to fashion a sentence by departing from the guidelines that I know won't be upheld on appeal."  Thus, the court protested its perceived lack of discretion to vary generally.

Moreover, the court fully considered all of the 18 U.S.C. § 3553(a) factors, yet found none justified a lower sentence.  After addressing § 3553(a) and

---

[3] The terms "variance" and "departure" were used somewhat interchangeably both by the district court at sentencing and in the briefing on appeal.  However, in light of the context of the district court's statements, especially its focus on *Rita*, we construe the court as actually addressing the perceived constraints on its discretion to grant a variance in sentencing, not a departure.

repeatedly noting the serious nature of the offense, the court commented, "I don't think that at least in this case there's any basis for not complying with those guidelines even though the sentences called for will seem harsh." (R., Vol. 5 at 87.) This careful review of the § 3553 factors suggests the court would not have varied from the guidelines at all, regardless of its view of *Rita*. Defendant certainly has not established the court would *likely* impose a *significantly* lesser sentence on remand. Therefore, Defendant has failed to satisfy the fourth prong of plain error review.

**B.     Substantive Reasonableness**

Defendant next argues the district court erred by failing to give adequate weight to certain sentencing arguments. We review challenges to the substantive reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 597 (2007).

Defendant first argues the district court failed to consider that her criminal history overstated her propensity for future crimes. Defendant contends she committed her base crimes by 1983, when she was twenty-six years old. These convictions would be too old to count were it not for her probation revocation and subsequent reincarceration. Defendant also points out that after she stopped using drugs in 1989, she had no intervening arrests or convictions. The government, on the other hand, argues Defendant's criminal history was understated because it was based only on a few of her prior offenses. Many offenses were too old to

-20-

count. The record shows the court considered Defendant's history adequately. The fact that Defendant ultimately returned to crime despite her drug rehabilitation speaks to the likelihood of future recidivism. Further, as the government points out, the guidelines already take into account Defendant's time off from criminal conduct by granting a lower criminal history category.

Defendant next contends the district court disproportionately considered Defendant's relevant conduct, unreasonably inflating the scope of her crime. In essence, Defendant argues the court should have considered for sentencing purposes only the final forfeiture amount of $232,000 instead of $1,243,444, which the court found to be the loss amount. Defendant claims the evidence showed that the $1.24 million loss amount arose only from defective Medicaid claims, not criminal conduct. However, one expert testified all 1331 claims were false and fraudulent. And the government established that the charged conduct, determined by the jury to be fraudulent, was representative of all 1331 claims. Therefore, we conclude that the court's loss calculation was not clearly erroneous.

Finally, Defendant argues her community service history was so significant that the court erred by not granting a downward departure or variance. As for a departure, we conclude that nothing in the court's language suggested that it thought itself unable to depart; rather, it discussed its perceived lack of authority to vary under § 3553(a). Therefore, we lack jurisdiction to review the court's refusal to depart. *See United States v. Browning*, 252 F.3d 1153, 1160 (10th Cir.

2001). As for a variance, witnesses testified to Defendant's positive involvement with youth counseling, drug prevention, and gang violence issues. However, the government notes that some of the community service Defendant cites as grounds for a lesser sentence is the same service she fraudulently billed to Medicaid and the same service that facilitated the crime by putting her in a position of trust. We conclude that even if Defendant's community service could be separated from her crimes, it was not an abuse of discretion for the court to find that her service did not warrant a downward variance.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.