FILED
United States Court of Appeals
Tenth Circuit

**January 28, 2010**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM C. CRABBE,

Defendant - Appellant.

No. 08-1393
(D. Ct. No. 1:06-CR-00294-MSK-01)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

Defendant-appellant William C. Crabbe was convicted of multiple counts of

failure to pay over federal payroll taxes in violation of 26 U.S.C. § 7202 and multiple

counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). On appeal, Mr.

Crabbe challenges his convictions on multiple grounds including: (1) the statutes under

which he was convicted are unconstitutionally vague; (2) the government presented

insufficient evidence to support his convictions; (3) the district court's erroneous jury

instructions misled the jury and caused prejudice to him; (4) multiple instances of

prosecutorial misconduct resulted in a fundamentally unfair trial; and (5) the erroneous

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jury instructions and multiple instances of prosecutorial misconduct amount to cumulative error that requires a reversal of his convictions. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. Crabbe's convictions arise from his ownership and management of Columbine Health Care, Inc. ("Columbine"). Columbine's business was to provide nurses, with whom it had ongoing contracts, to health care facilities on a short-term basis. Mr. Crabbe and his business partner, James Rowan, equally shared the bulk of Columbine's ownership interests with a small percentage of the company being owned by third parties. Mr. Rowan was Columbine's President and manager of its day-to-day operations. Mr. Crabbe, on the other hand, was Columbine's Vice President, had no defined managerial duties, and had a limited day-to-day role in the operation of the business. Indeed, there was substantial testimony that Mr. Rowan asserted dictatorial control over the company and sometimes directed employees not to discuss its operations with Mr. Crabbe.

Columbine's business model was to contract with nurses willing to provide short-term services to health care facilities, match these nurses with health care facilities based on the nurses' skills and the facilities' needs, and negotiate contracts with the facilities to deliver those services. All compensation for services was paid by the facilities to Columbine who would then pay the nurses based on a negotiated hourly wage. Each nurse that worked for Columbine received a packet of materials and was required to sign a form containing various contractual provisions that would govern the relationship

between the nurse and Columbine. Among these provisions was a statement explaining that the nurse "understand[s] that [she] will be acting as an employee of Columbine and that all taxes and other appropriate deductions shall be made from [her] compensation as provided by law." Consistent with this provision, Columbine distributed W-4 tax forms to its nurses, withheld federal taxes from their paychecks, and provided them with W-2 forms. The forms signed by the nurses also required that they consent to Columbine's authority to "terminate their employment."

Additionally, all nurses were required to wear Columbine name tags and were prohibited from discussing prospective employment opportunities with a facility while they were under contract with Columbine. Columbine also routinely reimbursed nurses for their travel expenses and often paid for their housing when they were assigned to facilities outside their hometowns.

Columbine also executed "Facility Agreements" with each health care facility to which it provided nurses. These agreements stated that "[Columbine], as employer, takes responsibility for its employees' employment taxes and shall deduct and pay applicable FICA, Federal and State withholding taxes." The "Facility Agreements" further provided that Columbine and each facility would "jointly plan and implement" a nurse's services, although the evidence suggested that Columbine actually asserted little control over a nurse's activities once she was placed with a facility.

Mr. Crabbe first became aware of Columbine's delinquent tax liabilities sometime in 1999. At that time, Mr. Crabbe discovered that the Columbine employee responsible

for preparing and filing the company's quarterly IRS Form 941s ("941s")[1] had been directed by Mr. Rowan to retain the forms rather than submit them to the IRS. Mr. Crabbe also discovered that Mr. Rowan had been siphoning substantial sums of Columbine funds for his own personal use.

Mr. Crabbe expressed deep concern about Columbine's tax delinquencies and Mr. Rowan's personal use of corporate funds. Ultimately, he convinced Mr. Rowan to retain a tax attorney who advised Columbine to stay up to date on its current tax liabilities and to pay any tax delinquencies as it could afford them. The record also demonstrates that Mr. Crabbe explored the possibility of officially treating Columbine nurses as independent contractors for tax purposes in order to diminish the company's tax liability; however, he was told by corporate officers who were more involved with the business operations of the company that this was not a viable option. For a short time after Mr. Crabbe first addressed Columbine's tax delinquencies, the company regularly paid its taxes, but by the end of 1999 it had fallen behind again.

In 2000, Mr. Crabbe unilaterally opened a bank account on Columbine's behalf out of which he intended to pay the company's taxes. He opened this account without Mr. Rowan's knowledge to prevent further diversions of corporate funds by him. Mr. Crabbe was the sole signatory on the account and the majority of checks written from it were signed by him. These checks included paychecks and other payments to Columbine

---

[1]A 941 is an IRS form by which companies report quarterly payroll taxes they have withheld and remit those withholdings to the IRS.

creditors.

In 2001, Mr. Crabbe agreed with Mr. Rowan to increase their respective draws from Columbine, which had increased its revenues, but only if Mr. Rowan would agree to make a concerted effort to resolve the company's tax problems. Mr. Rowan agreed to allow Mr. Crabbe to prepare the company's delinquent 941s and promised that he would file them himself. Mr. Crabbe used Columbine's payroll software to prepare the company's delinquent 941s which spanned from the first quarter of 1999 to the first quarter of 2001. Despite his arrangement with Mr. Rowan, Mr. Crabbe took it upon himself to file these forms once he had prepared them. On each of these forms, Mr. Crabbe left the "number of employees" section blank, and he later testified that he was focused on the total tax liability reflected in the forms which "seemed right" to him. In fact, these 941s and the payments Mr. Crabbe made pursuant to them only encompassed Columbine's corporate employees and did not include any of its nurses. Mr. Crabbe's failure to include the nurses on these forms was the basis for his failure to remit payroll tax convictions.

Mr. Crabbe continued to prepare 941s for quarters two through four of 2001, but on these later forms he represented that Columbine employed between twenty-one and thirty-one employees rather than leaving that section blank as he had done on prior 941s. Mr. Crabbe later admitted that at the time he filed these forms he was aware that Columbine had contracts with over 100 nurses. Furthermore, the record reflects that at the same time Mr. Crabbe represented to the IRS that Columbine employed less than

thirty-one people, he signed and filed state tax statements that reflected a much higher number of employees and a much greater total tax liability. These misrepresentations of the number of Columbine employees on 941s for the year 2001 formed the basis of Mr. Crabbe's false filing convictions.

In October 2002, Mr. Crabbe was informed by one of Columbine's financial officers that he had failed to file 941s for Columbine nurses from whom the company had withheld federal taxes and that he had misrepresented the number of Columbine employees on some of the 941s he had filed. Although he inquired about what steps he needed to take to remedy these misrepresentations and another Columbine employee began preparing correct and complete 941s, Mr. Crabbe took no further action at that time.

In 2003, the IRS became aware of Columbine's tax delinquencies and by 2004 it had opened a criminal investigation into the company and its officers. In August 2004, after being informed of the criminal investigation, Mr. Crabbe filed complete and correct 941s spanning from the first quarter of 1999 to the fourth quarter of 2002. These forms included Columbine's nurses as employees and accurately reflected Columbine's tax liability.

Despite these remedial measures, Mr. Crabbe was indicted for over thirty violations of federal criminal tax laws. A jury convicted him of ten out of eleven counts of failure to pay over payroll taxes and six out of twelve counts of filing false tax returns, and acquitted him of one charge of tax evasion. Mr. Crabbe filed motions for judgment

of acquittal and for a new trial.  The district court denied both motions and ultimately sentenced him to thirty-seven months' imprisonment.

## II.  DISCUSSION

A.      The Statutes Under Which Mr. Crabbe Was Convicted Are Not Unconstitutionally Vague

Mr. Crabbe contends on appeal that the statutory definitions of "employees" and "responsible persons" are unconstitutionally vague such that he was not given fair notice that Columbine had a duty to pay over payroll taxes for the nurses or that he was personally responsible for ensuring that these taxes were accurately reported and paid. Mr. Crabbe concedes that he did not raise these claims to the district court; therefore, we only review them for plain error.  *See United States v. Agnew*, 931 F.2d 1397, 1406 (10th Cir. 1991) (reviewing for plain error defendant's argument, raised for the first time on appeal, that the statutes under which he was convicted were unconstitutionally vague). The plain-error standard of review imposes a heavy burden on Mr. Crabbe to demonstrate that there is: "(1) error, (2) that is plain, (3) which affects [his] substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

"A statute is impermissibly vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits."  *United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009) (quotations omitted).  "[The Supreme] Court has long recognized that the constitutionality of a vague statutory

standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). This close relationship was articulated many years ago in *Screws v. United States*, 325 U.S. 91, 101–102 (1945), in which the Court stated:

> [T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning . . . The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

(quotations omitted). In other words, "a specific intent requirement . . . eliminate[s] the objection that [a] statute punishes the accused for an offense of which he was unaware." *Franklin-El*, 554 F.3d at 911.

Indeed, "[t]he proliferation of statutes and regulations has sometimes made it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the tax laws." *Cheek v. United States*, 498 U.S. 192, 199–200 (1991). To ensure that taxpayers are not exposed to criminal liability for unwittingly violating the complex tax code, Congress has made specific intent to violate the law an element of certain federal tax offenses. *Id*. at 200. Both statutes under which Mr. Crabbe was convicted require a "willful" violation of the code, and are therefore among the criminal tax offenses that require specific intent. *See* 26 U.S.C. § 7202 (imposing

criminal liability on a person who "willfully fails to collect or truthfully account for and pay over" a required tax); *see also id.* § 7206 (proscribing "willfully mak[ing] and subscrib[ing] any return, statement, or other document" which the maker "does not believe to be true and correct as to every material matter").  Accordingly, Mr. Crabbe's claims that he was unconstitutionally denied fair notice that his conduct violated these tax laws necessarily fail because the laws require specific intent.

B.    The Evidence Was Sufficient to Sustain Mr. Crabbe's Convictions

Mr. Crabbe's also contends on appeal that there was insufficient evidence to prove that under the Internal Revenue Code: (1) Columbine nurses were "employees" for whom the company was responsible to pay taxes; (2) Mr. Crabbe was a "responsible person" with a duty to pay Columbine's taxes and ensure that they were not falsely reported; and (3) Mr. Crabbe committed willful violations.   This court reviews the sufficiency of the evidence to support a jury verdict de novo and examines only whether taking the evidence, both direct and circumstantial, "in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999) (quotations omitted).  Although the evidence supporting a jury verdict must be substantial, "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Burkley*, 513 F.3d 1183, 1188 (10th Cir. 2008) (quotations omitted).

1.    *Columbine Nurses as "Employees"*

- 9 -

Under the Internal Revenue Code, the definition of "employee" includes "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." 26 U.S.C. § 3121(d)(2). The IRS has articulated a non-exhaustive list of twenty factors that bear on a person's status as either an employee or an independent contractor. *See* Rev. Rul. 87-41. Some of these factors include: (1) the employer's ability to control the manner in which the work is completed and the ultimate result of the work; (2) the extent to which the business's existence depends on the performance of the worker's duties; (3) the extent of a continuing relationship between the worker and the employer; (4) whether payment is made by the hour or week as opposed to by the job; (5) whether the employer pays the worker's business or travel expenses; (6) whether the worker can realize a profit or loss as a result of her services; (7) whether the worker performs more than de minimus services for more than one person or entity at a time; (8) the extent to which a worker makes her services open to the general public; and (9) the employer's right to terminate the worker and the worker's concomitant right to terminate her relationship with the employer. *Id.*

This circuit has adopted this twenty-factor test, but we have recognized that "[e]ach factor may not have application to every situation . . . and no one of the[] factors in isolation is dispositive; rather, it is the total situation that controls." *Eastern Inv. Corp. v. United States*, 49 F.3d 651, 653 (10th Cir. 1995) (quotations omitted). Nevertheless, we have recognized that the employer's ability to control the method and manner of the work is perhaps the most determinative factor. *Marvel v. United States*, 719 F.2d 1507,

1514 (10th Cir. 1983).

Mr. Crabbe's argument that Columbine nurses were either independent contractors or employees of the facilities in which they worked heavily relies on two opinions that are not binding on this court, *Critical Care Register Nursing, Inc. v. United States*, 776 F. Supp. 1025 (E.D. Pa. 1991), and *Hospital Resource Personnel, Inc. v. United States*, 68 F.3d 421 (11th Cir. 1995). Although both of these cases involve the worker classification of nurses by companies that provided temporary nurse staffing to health care facilities, they are both factually and legally distinguishable from Mr. Crabbe's case. Accordingly, we do not address them.

Instead, we apply the IRS's worker classification factors to the facts of this case. Here, Columbine had the contractual authority to control the manner of the nurses' work, even if that control was rarely, if ever, exercised; Columbine's existence was entirely dependent upon the nurses' work; the nurses had a continuing relationship with Columbine; Columbine paid nurses by the hour and routinely paid for their travel and housing expenses; the nurses were prohibited from discussing prospective employment opportunities with any health care facility while under contract with Columbine; and both Columbine and the nurses had the mutual right to terminate their relationship at will. These multiple factors all support the jury's conclusion that Columbine's nurses were indeed its employees. Accordingly, we determine that the jury had a substantial amount of evidence to conclude beyond a reasonable doubt that Columbine nurses were employees for whom the company was responsible for paying taxes.

## 2. *Mr. Crabbe as a "Responsible Person"*

Under the Internal Revenue Code, "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax" may be subject to criminal penalties. 26 U.S.C. § 6672(a). We have concluded that "[a] corporate officer or employee is responsible [under the Code] if he or she has significant, though not necessarily exclusive, authority in the general management and fiscal decisionmaking of the corporation." *Taylor v. IRS*, 69 F.3d 411, 416 (10th Cir. 1995) (quotations omitted). In this context we have also articulated a non-exhaustive list of factors to consider, which includes "whether the person: (1) held corporate office; (2) controlled financial affairs; (3) had authority to disburse corporate funds; (4) owned stock; and (5) had the ability to hire and fire employees." *Id*. If a person possesses sufficient indicia of responsibility, he is legally a "responsible person" under the Internal Revenue Code regardless of whether he has the final say on corporate expenditures or is specifically responsible for ensuring that the company's taxes are paid. *Id*.

In this case, Mr. Crabbe: (1) was the Vice President of Columbine; (2) had some control over Columbine's financial affairs, as demonstrated by his unilateral establishment of a corporate bank account; (3) had authority to distribute corporate funds, as demonstrated by his signing of corporate checks; (4) held a large share of Columbine's ownership interests; and (5) participated in firing at least one employee and ostensibly had the authority as Vice President of the company to hire or fire others. Furthermore, as

- 12 -

noted in *Taylor*, Mr. Crabbe's claim that Mr. Rowan often marginalized his authority and the fact that he was not, at least initially, specifically tasked with paying Columbine's taxes, do not conclusively establish that he was not a "responsible person" under the Internal Revenue Code. Accordingly, we conclude that the evidence sufficiently established each of our recognized indicia of responsibility and therefore the jury could reasonably conclude that he was a "responsible person."

3.      *Evidence of Mr. Crabbe's Willful Violations*

As noted above, both statutes under which Mr. Crabbe was convicted require willful violations of the tax code. These willfulness requirements impose a burden on the government to prove that "the law imposed a duty on [Mr. Crabbe], that [he] knew of this duty, and that he voluntarily and intentionally violated that duty." *Cheek*, 498 U.S. at 201.

Mr. Crabbe specifically argues that there was no evidence that he actually knew that Columbine nurses were employees such that the company had a duty to pay their payroll taxes or that he had a personal duty to ensure that Columbine's taxes were accurately reported and paid. As discussed above, the Internal Revenue Code imposed a clear duty on Columbine to pay the nurses' payroll taxes and it imposed a clear duty on Mr. Crabbe to ensure that Columbine's taxes were accurately reported and paid. It is also apparent that Mr. Crabbe was aware of these duties. The record demonstrates that Mr. Crabbe knew Columbine was withholding payroll taxes from nurses; he attempted to persuade others in power at Columbine to restructure the company so that nurses could be

treated as independent contractors rather than employees; and he made unilateral efforts to prepare and file 941s on Columbine's behalf.

Furthermore, there was ample evidence from which a jury could reasonably conclude that Mr. Crabbe intentionally did not fulfill his duties to pay taxes for Columbine's nurse employees and to file accurate 941s on the company's behalf. That evidence includes: (1) Mr. Crabbe's failed attempts to formally treat Columbine nurses as independent contractors in order to alleviate some of the company's tax liabilities; (2) Mr. Crabbe's admitted knowledge that Columbine had contracts with over 100 nurses; (3) Mr. Crabbe's failure to include the nurse employees in the 941s and his representation on those forms that Columbine had fewer than thirty-one employees while at the same time signing state tax statements that reflected a much higher number of employees and a much greater tax liability; (4) his failure to correct the false 941s he filed—even after receiving notice that they were incorrect—for over a year, and then, only after he became aware that he was the subject of a criminal investigation; and (5) his agreement with Mr. Rowan to increase their draws from Columbine when he was aware of the company's substantial tax delinquencies. This evidence is certainly sufficient for a reasonable jury to conclude beyond a reasonable doubt that Mr. Crabbe willfully violated his clearly articulated tax duties.

C.    The District Court's Jury Instructions Were Not Erroneous

Mr. Crabbe also asserts various claims that the district court's jury instructions were erroneous. He contends the district court: (1) did not properly instruct the jury on

- 14 -

the worker classification issue; (2) failed to instruct the jury in writing as to the differences in state and federal law regarding worker classification and "responsible persons;" (3) did not adequately instruct the jury regarding Mr. Crabbe's good faith defense; and (4) erroneously employed the term a "responsible person." Generally, "[w]e review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Bedford*, 536 F.3d 1148, 1152 (10th Cir. 2008) (quotations omitted). "We also [generally] review for abuse of discretion a district court's shaping or phrasing of a particular jury instruction." *Id.* In this case, however, Mr. Crabbe only objected below to the district court's jury instruction on worker classification. Accordingly, we review his other arguments, which are raised for the first time on appeal, under the plain-error standard of review discussed above. *See United States v. Hutchinson*, 573 F.3d 1011, 1019 (10th Cir. 2009) (analyzing claims of instructional error raised for the first time on appeal under a plain-error standard of review).

Mr. Crabbe's contention that the district court erroneously instructed the jury on the worker classification issue is without merit. Indeed, the district court, pursuant to Mr. Crabbe's objections, rewrote this instruction to track the language of the statute, enumerate the many factors bearing on the worker classification question, and emphasize that no one factor is dispositive. Certainly, the district court's carefully crafted jury instruction adequately apprised the jury of the applicable legal standards for that issue.

Accordingly, we find no error in the district court's worker classification jury instruction.[2]

Moreover, none of Mr. Crabbe's claims of instructional error raised for the first time in this appeal satisfy the stringent plain-error standard. First, his claim that the district court erroneously failed to instruct the jury in writing regarding the differences between state and federal law on the issue of worker classification is belied by the district court's oral admonition that federal law controlled in this case. Second, Mr. Crabbe's claim that the district court did not adequately instruct the jury regarding his good-faith defense is belied by the fact that the district court included, at Mr. Crabbe's request, an instruction regarding his ability to assert such a defense in this case. Finally, Mr. Crabbe's argument concerning the district court's responsible-person instruction primarily claims that the instruction was erroneous because it failed to put the words "responsible person" in quotations. Even if this were error, a proposition we do not decide, we fail to see how such an error could seriously affect the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we reject each of Mr. Crabbe's claims of instructional error.

D.      Mr. Crabbe Was Not Prejudiced By Prosecutorial Misconduct

---

[2]Relatedly, Mr. Crabbe appears to argue that the district court erred by failing to include a burden of proof instruction for each element of the crimes charged. This contention is similarly without merit. As the government points out, Mr. Crabbe does not provide any legal support for his claim that a district court must emphasize the government's "beyond a reasonable doubt" burden during every elemental instruction. Here, the district court apprised the jury of the government's burden multiple times throughout the trial and the jury instructions. Accordingly, the district court adequately instructed the jury regarding the government's burden of proof.

Finally, Mr. Crabbe asserts that the government made various statements in its closing argument that were aimed at misleading the jury and that rendered his trial fundamentally unfair. Like many of his other appellate arguments, we review these for plain error because Mr. Crabbe failed to object below to any government statements made during closing arguments. "Allegations of prosecutorial misconduct are mixed questions of fact and law that require a two-step process for review." *United States v. Rogers*, 556 F.3d 1130, 1140–41 (10th Cir. 2009). "We first determine whether the prosecutor's conduct was in fact improper, and second, whether the error was harmless beyond a reasonable doubt." *Id.* Generally, "[t]he government bears the burden of proving the error is harmless beyond a reasonable doubt." *Id.* When the defendant fails to timely object to an alleged error, however, "[i]t is the defendant, rather than the Government who bears the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Specifically, Mr. Crabbe claims that the government made improper statements regarding: (1) the wrong done to Columbine nurses by Mr. Crabbe's withholding taxes from their paychecks but failing to remit those withholdings to the IRS; (2) the state tax statements signed and filed by Mr. Crabbe; (3) the importance of the contract between Columbine and the nurses to the worker classification issue; (4) the law regarding whether Mr. Crabbe was a "responsible person"; and (5) the prosecutor's personal opinion of Mr. Crabbe's good-faith defense. All of these arguments, except the last, fail the first step of our two-step review because none of these statements to which Mr.

Crabbe objects were even improper.  Furthermore, while a prosecutor is obviously

prohibited from stating her personal beliefs in a closing argument, Mr. Crabbe did not

object to this statement and has failed to carry his burden to show that this statement

caused him prejudice.  Accordingly, Mr. Crabbe's allegations of prosecutorial misconduct

are without merit.[3]

## III.  CONCLUSION

For the reasons stated above, we AFFIRM.  Appellant's motion to file an

oversized reply brief is GRANTED.


ENTERED FOR THE COURT,



Deanell Reece Tacha
Circuit Judge

---

[3]Because we conclude that there was no instructional error or prosecutorial misconduct that caused Mr. Crabbe prejudice in this case, we necessarily reject Mr. Crabbe's argument that the combination of instructional error and prosecutorial misconduct resulted in cumulative error that requires reversal of his convictions.