**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 10, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

DEMONTE BELL, a/k/a C-Grill,

       Defendant - Appellant.

No. 12-5049

(N.D. Oklahoma)

(D.C. No. 4:11-CR-00094-JHP-2)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Defendant and appellant, Demonte Bell, appeals the 100-month sentence imposed on him following his plea of guilty to one count of conspiracy to kill a

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

person to prevent communication to federal law enforcement officers, in violation of 18 U.S.C. §§ 1512(k) and 1512(a)(1)(C). Because we find the sentence reasonable, and the district court did not err in declining to grant Mr. Bell a downward variance, we affirm the sentence in this case.

## BACKGROUND

Mr. Bell, along with co-defendant Phillip Summers, was charged by indictment with (1) conspiracy to retaliate against a person providing information to federal law enforcement officers, in violation of 18 U.S.C. §§ 1513(a)(1)(B) and 1513(f); (2) conspiracy to kill a person to prevent communication to federal law enforcement authorities, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 1512(k); (3) solicitation to commit murder, in violation of 18 U.S.C. § 373; and (4) use of interstate commerce facilities in the commission of murder for hire, in violation of 18 U.S.C. § 1958.[1] The remainder of the fifteen counts charged Mr. Summers only.

The essential elements of the criminal offense are as follows: Mr. Summers plotted to have Tulsa Police Detective Michael Hull murdered. Mr. Summers was angry with Detective Hull for a number of reasons. First, in 2004, Detective Hull had investigated and testified against Mr. Summers, who

_____

[1]Mr. Bell was actually named in four of the use-of-interstate-commerce-facilities counts.

was accused of committing a double murder (killing Ples Vann and his wife, Shelly). Additionally, Detective Hull had investigated Mr. Summers and Mr. Summers' brother, Michael, which led to federal Racketeering Influenced and Corrupt Organizations Act ("RICO") charges against Mr. Summers and culminating in a 252-month sentence for Mr. Summers. Finally, Mr. Summers believed, albeit erroneously, that Detective Hull had been involved in the murder of Mr. Summers' sister.

Mr. Summers was a high-ranking member of the Hoover Crips street gang. He had been in prison since April 2010, awaiting a new trial on the Vann murders.[2] In December 2010, Mr. Summers began asking a fellow inmate to smuggle into the prison a cellular phone so Mr. Summers could communicate with his associates outside the prison without being monitored by jail personnel. That inmate eventually reported Mr. Summers' request to the Bureau of Alcohol, Tobacco and Firearms ("ATF"). In January 2011, ATF provided the inmate with a cellular phone, which he gave to Mr. Summers. Law enforcement officials monitored this cell phone, which was the primary means of communication between Mr. Summers and defendant Bell.

---

[2]Mr. Summers had been convicted in January 2008 of the Vann murders and sentenced to death. On March 1, 2010, however, the Oklahoma Court of Criminal Appeals reversed the conviction and remanded to case to the state district court for a new trial.

Mr. Summers' fellow inmate knew where Detective Hull lived because he was accused of burglarizing the detective's home. Mr. Summers and the inmate discussed Mr. Summers' plan to kill Detective Hull. The inmate told Mr. Summers that he had an associate who could get the detective's address and complete the murder. This "associate" turned out to be an undercover Tulsa Police detective.

On January 25, 2011, Mr. Summers contacted Mr. Bell, using the monitored cell phone. The two discussed the plot to kill Detective Hull. Mr. Summers asked Mr. Bell to contact the "associate"/undercover detective and set up a meeting so that Mr. Bell could see where Detective Hull lived. Mr. Bell contacted the undercover detective.

As it turned out, Mr. Bell failed to appear at the scheduled meeting with the undercover detective. The detective informed Mr. Summers that he was unhappy with Mr. Bell's failure to appear. Mr. Summers then spoke to Mr. Bell and asked him if there were other people Mr. Bell knew who would complete the killing. Mr. Bell suggested that a Michael Lucas would be interested. Mr. Summers contacted Mr. Lucas and discussed the murder conspiracy with him. Mr. Bell gave the undercover detective Mr. Lucas's phone number.

On January 27, 2011, Mr. Bell was arrested for an unrelated crime. Mr. Lucas was then unwilling to meet the undercover detective without Mr. Bell's presence. Later that day, the undercover detective called Mr. Summers to tell him

(erroneously) that he, the undercover detective, had killed Detective Hull. Mr. Summers informed his fellow inmate of this development, and asked where he should send the payment for the completed job. Mr. Bell and Mr. Lucas were subsequently arrested.

Following his arrest, Mr. Bell began cooperating with Tulsa police investigators. After initially pleading not guilty, Mr. Bell ultimately accepted a plea agreement in which he pled guilty to one count—conspiracy to kill a person in order to prevent communication to federal officers—and the remaining counts against him in the indictment were dismissed. Mr. Bell admitted that he had acted as an intermediary between Mr. Summers and the undercover detective and that he knew he was facilitating a contract killing. Mr. Bell's cooperation assisted law enforcement authorities in getting Mr. Summers to plead guilty.

Prior to sentencing, the government moved for a downward departure pursuant to United States Sentencing Commission, Guidelines Manual ("USSG") §5K1.1 and 18 U.S.C. § 3553(e), based on Mr. Bell's substantial cooperation. Specifically, the government asked the district court to reduce Mr. Bell's USSG offense level from 33 to 27, which would decrease his advisory Guidelines sentencing range from 188-235 to 100-125 months.

Mr. Bell then moved for a downward variance, seeking to lower his total offense level to 25. His argument was that his role in the conspiracy was very similar to Mr. Lucas's rule. Yet Mr. Lucas was permitted to plead guilty to a

lesser crime than Mr. Bell with a lower offense level. He (Mr. Bell) further argued that he should have the same total offense level of 25 as Mr. Lucas did.

At the sentencing hearing, the district court granted the government's motion for a downward adjustment under USSG §5K1.1. Thus, Mr. Bell's offense level was 27 and the court sentenced him to 100 months' imprisonment (within the 100-125 advisory Guidelines range). The court further agreed with the government that the disparity between Mr. Bell's sentence and Mr. Lucas's sentence was warranted because Mr. Bell brought Mr. Lucas into the conspiracy. Mr. Bell also had a more severe criminal history than Mr. Lucas. This appeal followed, in which Mr. Bell challenges his sentence, arguing the district court erred in denying his requested downward variance.

## DISCUSSION

We review sentences for reasonableness under a deferential abuse-of-discretion standard. See United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1214 (10th Cir. 2008). "'Reasonableness review is a two-step process comprising a procedural and a substantive component.'" Id. (quoting United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008). See Gall v. United States, 552 U.S. 38, 51 (2007). "Procedural review asks whether the sentencing court committed any error in calculating or explaining the sentence." Id. Substantive review, on the other hand, "involves whether the length of the sentence is

-6-

reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007). A within-Guidelines sentence is entitled to a presumption of substantive reasonableness on appeal, and a defendant must rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a). Rita v. United States, 551 U.S. 338, 347 (2007); United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006). Finally, when reviewing a district court's sentence for substantive reasonableness under the § 3553(a) factors, we give substantial deference to the district court because it has an unquestionable institutional advantage, involving greater familiarity with individual cases and defendants, to consider whether the facts of the case justify a variance under § 3553(a). Rita, 551 U.S. at 363; United States v. Balbin-Mesa, 643 F.3d 783, 788 (10th Cir. 2011).

Mr. Bell concedes that "[t]here is no dispute that the district court properly calculated the advisory guideline." Appellant's Br. at 9. He thereby appears to waive any argument about procedural reasonableness, separate from his argument (the only argument presented in this appeal) that the district court erred in not granting him a downward variance.

We review for an abuse of discretion the district court's decision not to grant a downward variance. United States v. Franklin-El, 554 F.3d 903, 914 (10th Cir. 2009); United States v. Smart, 518 F.3d 800, 805 (10th Cir. 2008)

("[W]hether any . . . disparity justifies a sentencing variance in a given case raises a . . . question . . . of substantive reasonableness [which we review for an abuse of discretion].");United States v. Haley, 529 F.3d 1308, 1311 (10th Cir. 2008).

Mr. Bell's basic argument is that he and Mr. Lucas engaged in nearly identical conduct in the course of the conspiracy and that their sentences should, therefore, be the same.[3]  Any difference between their sentences, the argument goes, amounts to an unwarranted disparity, prohibited by one of the 18 U.S.C. § 3553(a) sentencing factors:  "The court, in determining the particular sentence to be imposed, shall consider– . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

We have said that "[a]lthough a district court may consider sentencing disparities between codefendants, 'disparate sentences are allowed where the disparity is explicable by the facts on the record.'" Haley, 529 F.3d at 1311 (quoting United States v. Davis, 437 F.3d 989, 997 (10th Cir. 2006)).  The district court stated as follows in denying Mr. Bell's requested variance:

> The court recognizes its authority to vary from the advisory sentencing range called for by the application of the guidelines.  In establishing an appropriate sentence for this defendant, the court has

---

[3]Specifically, Mr. Bell asked for "a variance of eight levels to a total offense level of 25, a variance guideline range of 84 to 105 months, and a sentence of 84 months incarceration."  Tr. of Sentencing Hr'g, R. Vol. 2 at 18.

considered the nature of the offense of conviction and the defendant's criminal history and personal characteristics.

The court has already granted the government's motion for a six-level downward departure in this case and defendant has received a four-level reduction in his offense level for being a minimal participant in the offense. The court is not persuaded by defendant's argument that his applicable offense level being higher than that of Michael Lucas in the related case will result in an unwarranted sentencing disparity between him and Lucas.

Despite his contention that his conduct is almost identical to that of Lucas, Mr. Lucas was brought into the conspiracy by the defendant, and therefore, would likely [have] had no involvement but for this defendant.

Taking into consideration the defendant's history and characteristics, as well as the nature and circumstances of the offense, need for just punishment, deterrence, protection of the public, the court cannot find that the circumstances in this case warrant a variance based on the sentencing factors cited in 18 U.S.C. Section 3553(a). Therefore, defendant's request for variance . . . is denied.

Tr. of Sentencing Hr'g, R. Vol. 2 at 19-20. In so concluding, the district court did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed in this case.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge